## HOWARD v. UNITED STATES.
### No. 12913.

United States Court of Appeals
Ninth Circuit.
April 23, 1952.

Russell H. Pray, Long Beach, Cal., Bernard S. Jefferson, Los Angeles, Cal., Eric A. Rose, Long Beach, Cal., for appellant.

2. See enumeration by Mr. Justice Douglas in the A. & P. case, supra, 340 U.S. at pages 156–158, 71 S.Ct. at pages 132, 133.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., George E. Danielson, Asst. U. S. Atty., all of Los Angeles, Cal., for appellee.

Before MATHEWS and ORR, Circuit Judges, and YANKWICH, District Judge.

ORR, Circuit Judge.

Appellant was indicted on 24 counts. He was convicted on counts Twenty-two and Twenty-four.

Count Twenty-two charges a violation of 12 U.S.C.A. § 1467(c) in that the appellant, as president of the Broadway Federal Savings and Loan Association of Los Angeles, on or about June 30, 1947, "* * * with intent to deceive the Home Owners' Loan Corporation and the Federal Home Loan Bank Board, its auditors and examiners, did make and cause to be made a false entry in a report to the Federal Home Loan Bank Board, namely: the regular monthly report for the month ending June 30, 1947, said entry being reflected in said report in the left-hand column under the caption 'Assets and Current Expenses' as follows: '1. First Mortgage Loans: a. Direct reduction loans,' and is in the amount of '$339,752.48,' which said sum is overstated in the sum of $8500.00." Appellant contends that at the time the offense was alleged to have been committed, the Federal Home Loan Bank Board, to whom the false report is alleged to have been made, was not in existence, having been consolidated with the National Housing Agency on June 30, 1947; hence, 12 U.S.C.A. § 1467(c) was without force and effect.

That statute makes it a crime to make, with requisite intent, "* * * any false entry in any * * * report * * * to the Board * * *." In the definitive section of the Act it is provided that "the term 'Board' means the Federal Home Loan Bank Board created under chapter 11 of this title." 12 U.S.C.A. § 1462(a). A violation of 12 U.S.C.A. § 1467(c) is defined as making a false entry in a report to a specifically named administrative agency. On or about June 30, 1947 there was in effect Executive Order No. 9070, 50 U.S.C.A.Appendix, § 601 note, promulgated by the President pursuant to the provisions of the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq. The order provides, in part, that:

"1. The following agencies, functions, duties, and powers are consolidated into a National Housing Agency and shall be administered as hereinafter provided under the direction and supervision of a National Housing Administrator: * * * (b) All functions, powers, and duties of the Federal Home Loan Bank Board and of its members.

*   *   *   *   *   *

"3. There shall be three main constituent units in the National Housing Agency. Each such unit shall be administered by a commissioner acting under the direction and supervision of the National Housing Administrator. * * * The unit administering the functions, powers, and duties of the Federal Home Loan Bank Board and its members shall be known as the Federal Home Loan Bank Administration, and the Chairman of the Federal Home Loan Bank Board shall serve as Federal Home Loan Bank Commissioner.

*   *   *   *   *   *

"8. The following personnel are not transferred hereunder: * * * (2) the members of the Federal Home Loan Bank Board other than the Chairman * * *. The offices of the foregoing personnel excepted from transfer by this paragraph * * * are hereby vacated for the duration of this order * * *."

The demise of the Federal Home Loan Bank Board was made complete by an express statement of its abolition in section 9 of Reorganization Plan No. 3 of 1947, 5 U.S.C.A. §§ 133y–133y–16 note, effective July 27, 1947. Subsequently, in the 1948 revision of the Criminal Code, § 1006 of Title 18, successor to 12 U.S.C.A. § 1467(c), omitted specific reference to the Federal Home Loan Bank Board, apparently in recognition of the fact that such agency was no longer functioning.

It seems apparent that a false report cannot be made, in a legal sense, to

a non-existent, non-functioning arm of the Government. The functions, powers and duties of the Federal Home Loan Bank Board had been consolidated into a new agency. Its chairman had been transferred to a new position in a new agency and had been given new powers. His service, after the effective date of the order, was in a new capacity. The members of the Board had had their offices vacated for the duration of the order. Thus, there was no Federal Home Loan Bank Board, as described in the statute, to which a report could be made. The agency which eventually received the report in question was not an agency " * * * created under chapter 11 of this title" but one created under authorization of the First War Powers Act. The statute, 12 U.S.C. A. § 1467(c) does not describe the crime in functional terms as does, for example, 18 U.S.C.A. § 1001. In this statute Congress chose to describe the crime in terms of a specific agency and the normal consequence is that when such agency ceases to function no crime can be committed under the statute. Changes in the administrative scheme of things occur with some frequency and we think that a statute such as the one now before us cannot fairly be made applicable to every agency which may receive some of the powers and functions of the Board without introducing a degree of vagueness into the statute wholly out of proportion to the language used and thus violate the rule that criminal statutes must be strictly construed.

Count Twenty-four charges a violation of 18 U.S.C.A. § 1006 in that appellant, as president of the Broadway Federal Savings and Loan Association of Los Angeles, on or about March 22, 1949 " * * * with intent to deceive the Home Owners' Loan Corporation and Federal Home Loan Bank Board, its auditors and examiners, did make and cause to be made a false entry in a report to the Federal Home Loan Bank Board, namely: an affidavit of the president of said association as at the close of business March 8, 1949, which said affidavit is false in that it alleges that all of the assets recorded on the association's books are in full force and effect and that the signatures appearing thereon are genuine, whereas in truth and in fact, there were recorded on the records of said association the following notes bearing the signature of one Colleen B. Williams and one Vasht Peake:

" 'Loan 287—Colleen B. Williams
" 'Loan 274—Vashti Peake'

and said signatures were false and forged as the defendant then knew."

Several reasons are advanced by appellant as to why the conviction on count Twenty-four should be set aside. We need consider but one, the insufficiency of the evidence to sustain the charge.

Count Twenty-four charges that the appellant knew that the signature of Vashti Peake on the note was not genuine. The evidence disclosed that the execution of the note grew out of a loan transaction which involved the execution of two separate instruments—a promissory note and a deed of trust. Each instrument contained the purported signature of one Vashti Peake, now known as Cottman, who testified positively that the signatures on the note and on the deed of trust were not her signatures. One Mildred P. Wilson, an employee of the bank and a sister of Vashti Peake, testified that she was asked by appellant to notarize the signature on the deed of trust, and that she (Mrs. Wilson) at the time informed appellant that the signature on the deed of trust was not genuine. No evidence appears in the record that appellant knew the signature on the note was not genuine. The note and the deed of trust are separate and distinct instruments. Proof of knowledge of a false signature on one will not support a finding of knowledge of the falsity of the signature on the other. Appellant was not charged with making a false entry and report of the deed of trust. The charge had reference to the note only.

■■ Count Twenty-four further charges, in the words of the statute, that appellant did make or cause to be made a false entry in a report to the Federal Home Loan Bank Board. The essence of the crime is a false report made to the Board.

In order to establish guilt it must be shown that appellant knew at the time of making the false entry that it was made as part of a report to the Board and that he either set or caused to be set in motion the transmission of the report to the Board or knew that in due course his false entry as part of a report would be transmitted to the Board. Communication of the report containing the false entry is the essence of the crime and in order to sustain a conviction it must be shown that the appellant intentionally participated in that communication. Cf. Reass v. United States, 4 Cir.1938, 99 F.2d 752. The evidence supports no more than an assumption that the affidavit was attached to and made a part of a report made by a bank examiner. The report was located in the office of the Chief Examiner in Washington. Appellant admitted signing the affidavit at the request of a Mr. Manley who made the examination of the bank. He (appellant) testified, and his testimony stands uncontradicted, that Mr. Manley placed the affidavit on his desk and asked him to sign it at a convenient time. Other portions of the report, consisting of some 16 pages, were not shown to him. He testified that he did not see the full report until long after he signed the affidavit. Appellant testified that on the day following that on which Manley requested him to sign the affidavit he signed it and left it on his desk. It was subsequently removed from his desk and purportedly attached to the report and sent to Washington. We cannot say that the evidence justifies the inference that appellant knew that a report to the Federal Home Loan Bank Board was being made and that the affidavit he signed was to become a part of it. The record does not disclose what type of bank examination was conducted by Manley. Mr. Noon, the witness producing the affidavit, testified that he had no knowledge of the circumstances under which appellant's signature was affixed to the affidavit, or in what manner the affidavit as part of the report came into the hands of any governmental agency. Mr. Manley, the examiner, was not called as a witness by the Government. The evidence fails to establish that appellant transmitted or authorized transmission of the report to the Board. It was not shown that appellant gave the affidavit to one whom he knew would transmit the report, in due course, to the Board, or that he knowingly left the affidavit in such a place that in the normal course of office routine it would be sent to the Board. Further, there is no showing of any custom in relation to these various matters from which any knowledge or authorization of appellant's could be inferred. A hiatus, which we think is fatal to the sustaining of the conviction on this count, exists as to a required showing of transmission of the report by appellant. The proof was wholly deficient in showing that appellant had transmitted or, even in a broad sense, had caused the report to be transmitted to the Board. Cf. United States v. Selph, D.C. S.D.Cal.1949, 82 F.Supp. 56.

Judgment reversed.