## UNITED STATES v. SELPH.
### No. 20023–Cr.

United States District Court
S. D. California, Central Division.
Jan. 27, 1949.

James M. Carter, U. S. Atty. and Paul Fitting, Esq. Asst. U. S. Atty., both of Los Angeles, Cal., for plaintiff.

John W. Preston and John W. Preston, Jr., both of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

### I. Introductory Statement of Facts.

The indictment in this case was returned on May 5, 1948. A demurrer to each of the seven counts in the indictment was filed on May 21, 1948. On September 24, 1948, my colleague, Judge Peirson M. Hall, treating the demurrer as a Motion to Dismiss Rule 12(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., denied it. The cause is set for trial before me for Tuesday, February 1, 1949.

At the insistance of counsel for the defendant, I acceded to the request to hear further argument on the sufficiency of the indictment. So doing, I stated to counsel that I considered the proceeding in the nature of a "voluntary pre-trial," aiming to discuss more fully a question of law, and that I was not treating the argument as a motion for rehearing. For, while conceding that a judge who determined a matter may entertain a rehearing of it, I know of no precedent which would allow one judge in a criminal case to rehear a matter determined by another, except when the same legal question should arise, at a subsequent stage of the proceedings, either on the admissibility of testimony, or on a motion to acquit made at the conclusion of the Government's case, and grounded on the insufficiency of the evidence, Rule 29, Federal Rules of Criminal Procedure.

A study of the matter convinces me that the indictment states an offense. This conclusion does not call for any action on my part. However, in view of the importance of the matter, I state for the record my reasons for this conclusion.

### II. The Indictment Charges an Offense.

The indictment, in seven counts, is drawn under Sections 697 and 715 of Title 38 U.S.C.A., which are referred to both in the heading of the indictment and in the sub-headings to each of the six counts. In substance, each recites that the defendant did "knowingly cause to be made, and did knowingly aid, assist, and procure the making and presentation of, a false and fraudulent certificate and paper concerning a claim for benefits under the Servicemen's Readjustment Act of 1944 (U.S.C., Title

38, Secs. 694 et seq.)" Then each count states that the defendant did cause, aid, assist and procure a branch of the Bank of America to state in a Home Loan Report presented to the United States Veterans Administration that the price paid by a named veteran for residential property was $8200 as determined by appraisal, when, in fact, the sale price was $8930, or $730 in excess of the appraisal.

Section 694 of the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 694, provides:

"Upon making a loan as provided in this sub-chapter, the lender shall forthwith transmit to the Administrator a statement setting forth the full name and serial number of the veteran, amount and terms of the loan, and the legal description of the property, together with the appraisal report made by the designated appraiser."

The regulations promulgated by the Administrator of Veterans' Affairs require that evidence of compliance with the requirement of Section 694(c) be shown by certification of the lender. Section 36:4303 (c) (1), C.F.R., 1946 Sup., Title 38, p. 5944. None of the counts of the indictment charges any criminal participation or fraudulent knowledge on the part of the bank. For this reason, and because (it is claimed) no duty is imposed by the law on the defendant with reference to the loan, it is argued that none of the counts states an offense.

Section 715 of Title 38 U.S.C.A., punishes both him who knowingly makes or *causes* to be made, and him *who aids or assists in,* or procures the making or presentation of, the false or fraudulent statement or writing denounced. Section 697 of Title 38 makes the section applicable to claims under the Servicemen's Readjustment Act of 1944, 38 U.S.C.A. § 697.

■ It is axiomatic that when an indictment charges one with aiding and abetting the criminal act of another, the latter (known at common law as the "principal") *must have committed an offense* before the aider and abetter (known at common law as the "accessory") can be prosecuted. See, Coffin v. United States, 1896, 162 U.S. 664, 669, 16 S.Ct. 943, 40 L.Ed. 1109; Havener v. United States, 1926, 8 Cir., 15 F.2d 503, 505; Yenkichi Ito v. United States, 1933, 9 Cir., 64 F.2d 73, 75; United States v. Peoni, 1938, 2 Cir., 100 F.2d 401; United States v. Dellaro, 1938, 2 Cir., 99 F.2d 781; Nigro v. United States, 1931, 8 Cir., 117 F.2d 624, 630, 133 A.L.R. 1128; Morei v. United States, 1942, 6 Cir., 127 F.2d 827, 831; Morgan v. United States, 1947, 10 Cir. 159 F.2d 85, 87.

■ The same cases teach that if the prosecution relies solely on aiding and abetting, it must charge and prove criminal concert with the principal. However, the prosecution may, if it chooses, charge the direct commission of the offense and sustain it by proof of aiding and abetting. 18 U.S.C.A. § 2. And the courts, in interpreting the old, general section, 18 U.S.C.A. § 550, have held that he who causes another to commit a criminal act innocently may be prosecuted for the principal offense. Familiar illustrations are cases arising under the Harrison Anti-Narcotic Act, 26 U.S.C.A. §§ 2550–2564, in which physicians putting in circulation illegal narcotic prescriptions have been prosecuted for "selling" narcotics illegally, although the sale was actually made *innocently* by the druggists who filled the prescriptions. See Jin Fuey Moy v. United States, 1920, 254 U.S. 189, 41 S.C. 98, 65 L.Ed. 214; Du Vall v. United States, 1936, 9 Cir., 82 F.2d 382; Nigro v. United States, 1941, 8 Cir., 117 F.2d 624, 133 A.L.R. 1128; United States v. Brandenburg, 1946, 3 Cir., 155 F.2d 110. And convictions have been obtained under the mail fraud statute, 18 U.S.C.A. § 338 [now § 1341], although the mailing was done through innocent media such as, for instance, banks which whom checks, the fruits of the fraud, were deposited. See, Spear v. United States, 1915, 8 Cir., 228 F. 485, 488; Spear v. United States, 1917, 8 Cir., 246 F. 250, 251; Shea v. United States, 1918, 6 Cir., 251 F. 440, 448; Savage v. United States, 1920, 8 Cir., 270 F. 14, 21; United States v. Weisman, 1936, 2 Cir., 83 F.2d 470, 472, 107 A.L.R. 293; Tincher v. United States, 1926, 4 Cir., 11 F.2d 18, 21; Moffitt v. United States, 1946, 10 Cir., 154 F.2d 402. And see, Gorbett v. United States, 1937, 8 Cir., 89 F.2d 124, 127, 128; Decker v. United States, 1944, 4 Cir., 140 F.2d 378, 379, 380.

The last group of cases just referred to stem from United States v. Kenofskey, 1917, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836. There, the trial court had sustained a demurrer to an indictment under the mail fraud statute, 18 U.S.C.A. § 338 [now § 1341], upon the ground that the facts did not show mailing or causing to be mailed. The defendant was the agent and assistant superintendent at New Orleans, Louisiana, of a life insurance company. It was part of his duty to obtain certificates and proofs of death of persons insured by the company, to view the remains of the deceased policy-holders and have them identified, and deliver the certificates in proof of death to the superintendent of the local office at New Orleans for forwarding to the Home Office of the company at Richmond, Virginia. The defendant falsely reported to his company that he had received a valid and genuine claim, proof of death and certificates properly executed by the beneficiary in a policy issued upon the life of one Frederick Wicker. He signed the certificate as assistant superintendent. The superintendent—his admitted superior—examined the documents and (*as here*), *without knowledge of their fraudulent character*, affixed his signature to them, enclosed them in an envelope which he deposited in the United States mail addressed to the Home Office. In truth, the acts of the defendant were a part of a scheme to defraud his company. For Wicker was still living. The trial court had held that the indictment did not state an offense for two reasons. The only one which concerns us here was that *the superintendent at New Orleans was not the agent of the defendant.* In expressing its disapproval of the ruling and reversing the order, the Supreme Court said:

"The words of § 215 are *'place, or cause to be placed* (italics ours), any letter, * * * package, writing, * * * in any postoffice, * * * to be sent or delivered * * *'* 'Cause' is a word of very broad import and its meaning is generally known. It is used in the section in its well-known sense of bringing about, and in such sense it is applicable to the conduct of Kenofskey. *He deliberately calculated the effect of giving the false proof to his superior officer; and the effect followed, demonstrating the efficacy of his selection of means. It certainly cannot be said that the superintendent received authority from the insurance company to transmit to it false proofs. He became Kenofskey's agent for that purpose and the means by which he offered against the provisions of the statute.*" United States v. Kenofskey, 1917, 242 U.S. 440, 443, 37 S.Ct. 438, 439, 61 L.Ed. 836. (Emphasis added)

Similar rulings have been made under the obscenity statute. See Demollie v. United States, 1906, 8 Cir., 144 F. 363, L.R.A.,N.S., 424, 7 Ann.Cas. 121.

The logic of these rulings is apparent. It flows from the fact that he who procures a criminal act to be done is responsible for it. See my opinion in People v. Armentrout, 1931, 118 Cal.App.Supp. 761; 1 P.2d 556. And this is true, even though the criminal act is but "one step toward" the achievement of the criminal aim. Kann v. United States, 1944, 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 88, 157 A.L.R. 406.

So here, while the statute and regulations under it require the lender to execute the certificate relating to the loan when the defendant—knowing that the certificate is required as a condition precedent to the guarantee of the loan by the Government—concealed the overcharge from the bank and the Veterans Administration, he "became liable for every link in the chain of events which he had set in motion which (were) reasonably or ordinarily required * * * to complete the transaction." Moffitt v. United States, 1946, 10 Cir., 154 F.2d 402, 406. And this, although the defendant, because he is not required to make or present the certificate, "is incompetent to commit the crime in person." 22 C.J.S., Criminal Law, § 90, page 163. The new Criminal Code specifically recognizes criminal agency through innocent persons by providing:

"(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such." 18 U.S.C.A. § 2(b).

And the particular statute under which the prosecution is instituted, 38 U.S.C.A.

§ 715, punishes those who make *or cause to be made* the false statements concerning claims, as well as those who aid and assist in so doing.

If the indictment in this case charged mere aiding and abetting, the attack made upon it might prevail. However, each of the counts of the indictment charges, in the language already quoted, that the defendant *did cause to be made*—as well as that *he did* aid, assist and procure the making of—the fraudulent certificate. In particularizing, each count again uses the word "cause" along with "aid, assist and procure" in charging that the defendant brought about the making by the bank of the false statements concerning the reasonable value of the property.

As it is permissible to charge an offense in the language of a statute, the language used here is broad enough to fasten criminal responsibility on the defendant, *if the facts alleged are proved.*

I am, therefore, of the view that the indictment is sufficient in this respect.