**UNITED STATES of America,**
**Appellee,**

v.

**James RAMEY, Jr., and Louise Ramey,**
**Appellants.**

**No. 9259.**

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1964.

Decided Sept. 14, 1964.

William L. Jacobs, Parkersburg, W. Va., for appellant.

Howard A. Glickstein, Attorney, Department of Justice (Burke Marshall, Asst. Atty. Gen., Harold H. Greene and Edgar N. Brown, Attorneys, Department of Justice, and Carl Belcher, Acting U. S. Atty., on brief), for appellee.

Before HAYNSWORTH and BRYAN, Circuit Judges, and HEMPHILL, District Judge.

HEMPHILL, District Judge:

Appellant,[1] a Wayne County, West Virginia, Constable, and candidate for reelection in the November 6, 1962, General Election, using an illegal and allegedly fictitious warrant issued by his wife, a Justice of the Peace, while accompanied by another officer, arrested Homer Fraley at approximately 3:30 A.M. election morning, and placed him in jail. Fraley was an election official of the largest precinct in Grant District, had become active in an effort to challenge registrations in the precinct and had consulted the County Prosecutor and Circuit Clerk, requesting of the latter blanks to use in challenging voters. He remained in jail until approximately noon on election day and did not serve as an election official.

The charge against Fraley was rape, allegedly November 2, 1962, on one "Mary Marcum". Fraley was never indicted and Mary Marcum could not be found to go before the Grand Jury.

Other evidence shows that appellant went to County Justice of the Peace Mills on November 5, 1962, and asked for two rape "warrants", was given blank warrants, and Mills dictated the wording for a warrant for rape. The warrants were supposed to have an affidavit, or "complaint", on one side and a warrant on the other, but a printer had mistakenly printed two warrants on the form. The warrant used by appellant was of such nature; the warrants wife Louise Ramey claimed to have written on November 2 had the same mistake, and the claimed signature of Mary Marcum was to a charge on a warrant form and not an affidavit; and was not sworn to. In addition, the return on the warrant shows Fraley was brought before Louise Ramey; this was not true.

Miriam Hughes, babysitter for the Rameys, claimed she saw appellant on Sunday, November 4th, and recalled an election morning statement by appellant to wife, that: "We've got to get out of here. We've got to get out to McComas because the man is in jail and we've got to get up there". Miriam Hughes inquired as to the man's identity and, to

1. The notice of appeal filed in this case was filed on behalf of both James Ramey, Jr., and Louise Ramey, his wife. However, James Ramey, Jr., is the only appellant on whose behalf a brief has been submitted to his Court. All references in this opinion to "defendant" or "appellant" refer to James Ramey, Jr.

**514**

quote from the record: "So I said, 'who?', and he says, 'Why, Homer Fraley'". She recited that, grinning, he told of the victim as "some Marcum girl".

Other evidence of related activities are found in the record which reflects a sufficiency of facts to present the guilt or innocence of appellant to the jury. He has had his day in Court and a jury of his peers has passed on the issues of fact.

Appellant was indicted and convicted on two counts of an indictment charging in the first count violation of 18 U.S.C. § 242, and in the second count, which also charged appellant's wife, Louise, with violation of 18 U.S.C. § 371. When the case was first called at the September Term of the United States District Court for the Southern District of West Virginia, appellant's counsel moved to dismiss on three grounds, only two of which are pressed here, namely: That the first count of the indictment did not state facts sufficient to state a cause or support an indictment; and, that Louise Ramey was immune from prosecution because her acts were done in her official capacity. (In this appeal, appellant claims for the first time the immunity which his wife, Louise, claimed at time of trial. Nevertheless, we are giving appellant the benefit of having made that motion in his own behalf.) Conviction followed at the November Term.

■ Neither the arrest nor the subsequent events were accompanied by violence or physical abuse upon the accused, and the defendant seeks to take himself outside the purview of 18 U.S.C. § 242 because there is no evidence of violence or physical abuse. The contention on the part of appellant that lack of violence or abuse denudes or abates the offense is groundless. Physical abuse or violence is not a necessary element of the crime set forth under the Act.

18 U.S.C. § 242 provides:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any in-habitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution of laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both. June 25, 1948, c. 645, 62 Stat. 696."

18 U.S.C. § 242 is the real offense in both counts, as the conspiracy count, 18 U.S.C. § 371, charged as the overt act the violation of the civil rights of Fraley as charged in Section 242, with political ambitions as the motive. Appellant, then, could be guilty on neither count, unless he acted under "color of law".

■ When an officer, knowing a warrant to be illegal, groundless, or fictitious, willfully uses his authority, and/or such an instrument to arrest and incarcerate the accused, such action is a deprivation of the right of the arrested to liberty and a violation of 18 U.S.C. § 242. Neither threat nor violence is a necessary ingredient of the offense under such circumstances. Correspondingly, if and when such person conspires with another to engage in such conduct, under such authority, and does so, and the overt act of arrest and/or incarceration, or both, is present, he is in violation of 18 U.S.C. § 371.

18 U.S.C. § 371 provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

■■ There is no doubt that appellant acted under "color of law"; he went

to Fraley's home as a constable, an officer of a political subdivision of the State of West Virginia. The jury found a misuse of power on his part. "Under color of law" means under pretense of law, as affecting the question of the State action under this clause. Baldwin v. Morgan, (CA Ala.1958) 251 F.2d 780. Under 18 U.S.C. § 242, "color of law" includes misuse of power possessed by virtue of State law and made possible only because the wrongdoer is clothed with authority of State law. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774.

The statute uses the term "willfully". The trial court correctly instructed the jury that: "In law the use of the words 'wilful' and 'wilfully' generally imply a conscious purpose to do wrong. Doing a thing knowingly and willfully implies not only a knowledge of the thing done, but a determination to do it with evil purpose or motive * * *." "Willful", as applied to this section of the Act, implies not merely a conscious purpose to do wrong, but a specific intent to deprive Fraley of a right. Crews v. United States, (CCA Fla.1947), 160 F.2d 746; Williams v. United States, supra.

But, the Court is queried, does 18 U.S.C. § 242, and, it follows the Fourteenth Amendment to the Constitution apply, when the violation was on a State level, as here, the warrant being a process of the State, issued by a State officer, charging an offense against State law, and served by a State official? The Court finds that the statute and the Amendment clearly apply. " * * * [T]he constitutional amendment was ordained for a purpose. It was to secure equal rights to all persons, and, to insure to all persons the enjoyment of such rights, power was given to Congress to enforce its provisions by appropriate legislation. *Such legislation must act on persons, not the abstract thing denominated a State* (italics ours), but upon the persons who are agents of the State in the denial of the rights which were intended to be secured." Ex Parte Virginia, 100 U.S. 339, 347, 25 L.Ed. 676, Catlette v. United States, (CCA 4) 132 F.2d 902, 905.

Appellant questioned proof of corpus delicti. In this case the corpus delicti of the offense charged is the willful deprivation of the rights of a citizen or inhabitant of this country, as defined in 18 U.S.C. § 242, by an officer under "color of law", or by one officially designated, deputized, or commissioned (by proper authority) as an official of the United States, or any State or political subdivision thereof. This is not limited to those cases in which illegal or groundless process is used. And such officer, designee-officer, deputy or commissioned official has no immunity by virtue of his office. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368. In the Classic case, election officials were included in those having "color of law", in conducting a primary election. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774, applied coverage to a private detective holding a special officer's card. Catlette v. United States, (CCA, W.Va., 1943) 132 F.2d 902, applied the coverage to a Sheriff who removed his badge before committing the indignities complained of. Thus, one who has the privilege of office, must, of necessity, recognize its responsibility.

We do not suggest, of course, that a violation of 18 U.S.C. § 242 would occur upon an arrest under a valid arrest warrant solely because some political or evil motive may underlie issuance of the warrant, or its service. Here, Ramey knew the crime was fictitious and the warrant fictitious. Under those circumstances, the arrest in furtherance of his political ambitions was a violation of the statute.

It is not necessary for us to pass on whether the charge of rape was fictitious, nor do we put the statutory umbrella over this facet of the case: The warrant was found to be fictitious and if we are to agree with the statement in appellant's brief, groundless. The jury found that appellant, and his wife, knew

this. Despite this knowledge a citizen was arrested, put in jail. The jury's verdict established the truth of the Government's contention.

Affirmed.