**UNITED STATES of America, Appellee,**

v.

**Charles E. LESTER and Edward Anthony Buccieri, Appellants.**

**Nos. 16093, 16094.**

United States Court of Appeals
Sixth Circuit.

July 8, 1966.

J. Leonard Walker, Louisville, Ky., for appellant, Lester.

Howell W. Vincent, Covington, Ky., J. Leonard Walker, Louisville, Ky., on brief, for appellant, Buccieri.

Harry I. Subin, Dept. of Justice, Washington, D. C., Herbert J. Miller, Jr., Asst. Atty. Gen., Peter R. Richards, Atty., Dept. of Justice, Washington, D. C., on brief, for appellee.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and MATHES, Senior District Judge.*

MATHES, Senior District Judge.

Charles E. Lester and Edward Anthony Buccieri appeal from the judgment entered upon a jury verdict finding them guilty as charged, in count one of an indictment, which alleged that appellants and another private citizen, one Carinci, conspired together and with three members of the police force of Newport, Kentucky, to commit an offense against the laws of the United States, in violation of 18 U.S.C. § 371.

The offense averred to be the object of this conspiracy was to violate 18 U.S.C. § 242 by willfully depriving one George W. Ratterman, under color of State law, "of rights, privileges and immunities secured to him and protected by the Fourteenth Amendment to the Constitution of the United States; namely, the right not to be deprived of liberty without due process of law, the right to be free from arrest by an officer acting * * * without legal justification * * * and the right not to be denied the equal protection of the law." It is further alleged in the indictment that: "It was the plan and purpose of the conspiracy that [the three defendant police officers] * * *, while acting * * * under color of law, would arrest and imprison George W. Ratterman, charge him with a violation of law, and cause his conviction, all knowing him to be innocent."

In count two of the indictment, the police officers were accused of the commis-

---

* William C. Mathes, Senior District Judge of the Southern District of California, sitting by designation.

sion of the substantive offense which was the asserted object of the conspiracy; while appellants and Carinci were charged with aiding and abetting the police officers in their violation of 18 U.S.C. § 242. The jury convicted both appellants of the conspiracy charged in count one, but acquitted them of the substantive offense charged in count two. All other defendants, including the three police officers, were acquitted by jury verdict of all charges—both the conspiracy and the substantive offense.

As grounds for reversal of their conviction on the conspiracy count, appellants contend: (1) that the evidence was insufficient to support the conviction; (2) that in giving the jury an instruction which included reference to "persons unknown", the trial court committed prejudicial error; (3) that the trial court likewise erred in refusing to instruct the jury: "Unless you find from the evidence that one or more of the * * * [police officers] were acting under color of law and guilty of the alleged charges * * *, then the law is for the defendant, * * * Lester, and you shall so find * * *"; and (4) that since the police officers were acquitted on both counts, appellants' motion after verdict for judgment of acquittal, pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure, should have been granted. We shall deal with each of these contentions seriatim.

■ In determining whether the evidence of guilt was sufficient to sustain the verdict, it is worth recalling that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." [Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).]

The evidence, direct and circumstantial, in the case at bar, together with the inferences which the jury could reasonably have drawn therefrom, combined to warrant the jury in finding *inter alia* the following facts: The Glenn-Tropicana, a combination nightclub and hotel in Newport, Kentucky, across the Ohio River from Cincinnati, had been favored for many years with somewhat-less-than-vigorous enforcement of the State laws prohibiting gambling and prostitution. In April of 1961, upon the announcement of George W. Ratterman as a "reform" candidate for sheriff, defendant Carinci, a co-proprietor of the Glenn-Tropicana, telephoned one Thomas Paisley and asked him to arrange a meeting for Carinci with Ratterman.

A few days later, on April 14, appellant Lester, attorney for the Glenn-Tropicana, telephoned a Newport photographer and asked him to talk to appellant Buccieri, another co-proprietor of the Glenn-Tropicana, about a picture. In due course, the photographer contacted Buccieri who told the photographer that his services would be needed "to take a picture of a man and a woman in a room"; and added the assurance: "Now, don't worry about anything, we will protect you." The photographer gave Buccieri a telephone number where he could be reached at night.

On May 8, 1961, Paisley came to Cincinnati and had cocktails and dinner with Ratterman, commencing at about 5:45 in the afternoon, following which they met with Carinci at a Cincinnati restaurant. After consuming several drinks in the course of the evening, Ratterman and Carinci and Paisley went over to the Glenn-Tropicana for supper. Upon their arrival about 1:30 A.M., Ratterman and Paisley were ushered into Glenn-Tropicana's suite 314 on the third floor, near which an illegal gambling operation was regularly conducted. Appellant Buccieri then sent Rita Desmond, one of the club's showgirls upstairs to suite 314 to have a drink with Paisley and Ratterman. Shortly after Rita arrived, Ratterman, who was extremely drowsy by now, left the sitting room of the suite and lay down in an adjoining bedroom.

Carinci next directed April Flowers, another of the Glenn-Tropicana's showgirls, to stop her striptease act and go at once to suite 314 without bothering to change her costume. When April arrived, she was asked by Rita to go into

the bedroom and try to awaken Ratterman. April did so, but her efforts failed to arouse Ratterman. Carinci then came to suite 314 and requested Rita and Paisley to go elsewhere in the club with him, leaving April and Ratterman alone in the bedroom of 314.

Meanwhile, approximately ten minutes after Ratterman had arrived at the Glenn-Tropicana, someone called the photographer's home, and left word for him to call Buccieri at the club. However, the photographer did not return the call. At 2:20 A.M., the gambling operations on the third floor were closed substantially earlier than usual, and the patrons were asked to leave the third floor.

At 2:32 A.M., an anonymous phone call was received at the Newport police station for one of the defendant police officers, who was told: "If you want to get George Ratterman, he is in Room 314 of the Glenn Hotel." The three defendant officers thereupon went to the Glenn-Tropicana at 2:35 A.M., where they first arrested Carinci, and then April Flowers as she emerged from the bedroom of suite 314. That done, there followed a brief scuffle between the police officers and Ratterman, and the latter was taken into custody, wrapped in a bedspread. Testimony by the police officers that he was found with his trousers off was disputed by Ratterman, who said that his trousers had been removed from him by the officers.

Appellant Lester promptly arrived at the police station, after having called a bondsman who posted bail for April Flowers and Carinci, but refused to provide bail for Ratterman. Appellant Lester admitted that he had been up since 2:00 A.M., "when the Ratterman deal broke"—well more than a half hour before the arrests occurred. At approximately 4:00 A.M. following the arrests, all six persons accused in the indictment —including the three police officers— were seen together at the Glenn-Tropicana, and at the Flamingo Club an hour later.

Examination of Ratterman the following day disclosed traces of from three to four grams of chloral hydrate ["knockout drops"] estimated to have been ingested between 10:00 and 11:00 P.M. the previous evening.

Since the jury acquitted all the accused of the substantive offense charged in count two of the indictment, it would serve no useful purpose to recount here the evidence dealing particularly with that offense; other than perhaps to record that the police-court case against Ratterman was dismissed after his attorney was able to produce the photographer, whose account of the efforts to have him take a picture of the planned bedroom scene persuaded the City Attorney of Newport that the affair was a sham.

■ There was ample evidence to sustain the conviction of both appellants on the conspiracy count. Indeed, we must say that the evidence was ample to sustain a conviction of all defendants on both counts.

Turning now to appellants' objections to the instructions given to the jury the record discloses, as appellants point out, that the District Court instructed the jury in the language of the indictment at one point during the charge and, in so doing, did say that if the jury should believe beyond a reasonable doubt that the six defendants named in the conspiracy count had conspired with each other "and with other persons to the grand jury unknown", as charged, the defendants could be found guilty. But the District Judge went on to make it crystal clear that only the six named defendants were involved under the evidence in the case, by further instructing the jury that: "[T]he conspiracy charged in the first count * * is a charge that these six defendants agreed among themselves to commit the unlawful act. * * * "

■ Moreover, no objection to the mention of "persons unknown" was made at the trial [see Fed.R.Crim.P. 30] and, considering the instructions as a whole, the reference to "persons unknown" of which appellants complain could not have

adversely affected any of their substantial rights [see: Fed.R.Crim.P. 52(b); United States v. Walker, 313 F.2d 236, 241 (6th Cir. 1963); Conley v. United States, 257 F.2d 141, 144 (6th Cir. 1958)].

The gist of appellants' argument in support of their remaining contentions rests upon the assumption that since they, as private citizens, were incapable of acting "under color of law", and hence were incapable of the offense defined in 18 U.S.C. § 242, they could not be guilty of conspiring to commit that offense in violation of 18 U.S.C. § 371. [Cf.: United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (3/28/66); United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (3/28/66).]

This argument misconceives the function of 18 U.S.C. § 2, which provides that:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. [and]

"(b) Whoever willfully causes an act to be done which if directly performed by him *or another* would be an offense against the United States, is punishable as a principal." [Italics added.]

■ In keeping with the provisions of § 2, it has long been held that an indictment need not specifically charge "aiding and abetting" or "causing" the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either. All indictments must be read in effect, then, as if the alternatives provided by 18 U.S.C. § 2 were embodied in each count thereof. [See: Nye & Nisson v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); Remus v. United States, 291 F. 513 (6th Cir. 1923); cf. Fed.R.Crim.P. 7(c).]

■ In the case at bar, therefore, both the indictment and the verdict must be read in light of the acquittal of the police officers, as if it were alleged, and the jury had found, that appellants had conspired willfully to "cause" innocent police

officers to act "under color of law" to deprive Ratterman of his civil rights, in contravention of 18 U.S.C. § 371. [See Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954).]

To this appellants would reply that since it is one of the essential elements of the offense defined in 18 U.S.C. § 242 that the act depriving a person of his "civil rights" be done "under color of law", and appellants were incapable of acting under "color of law", they may not be convicted of conspiring, in violation of 18 U.S.C. § 371, to cause innocent agents, who do have such capacity, to commit acts denounced by 18 U.S.C. § 242.

■ The short answer to this argument is that it was of doubtful enough validity prior to the 1951 amendment of 18 U.S.C. § 2(b), and can have no possible validity since that amendment. [See 65 Stat. 717 (1951).] For it was held long ago that even though "a defendant was incompetent to commit the offense as principal by reason of not being of a particular age, sex, condition, or class, he may, nevertheless, be punished as procurer or abettor." [United States v. Snyder, 14 F. 554, 556 (C.C.D.Minn. 1882).]

This doctrine is an outgrowth of common law principles of criminal responsibility dating at least as far back as Regina v. Saunders, 2 Plowd. 473 (1575); and of principles of civil responsibility established, by force of the maxim *qui facit per alium facit per se*, at least as early as the 14th century. [See: United States v. Gooding, 25 U.S. (12 Wheat.) 460, 6 L.Ed. 693 (1827); Sayre, Criminal Responsibility for the Acts of Another, 43 Harv.L.Rev. 689 (1930).]

■ Although a literal reading of the predecessor of present 18 U.S.C. § 2(b) only made punishable as principal one who willfully caused an act to be done "which if directly performed by him" would be an offense against the United States [62 Stat. 684 (1948)], it was declared that a person incapable of committing a particular offense against the

United States was nonetheless punishable as a principal, if he willfully caused an innocent person, capable of doing so, to commit the proscribed act. [See United States v. Selph, 82 F.Supp. 56 (S.D.Calif. 1949); cf. Boushea v. United States, 173 F.2d 131 (8th Cir. 1949).] This view as to the scope of § 2(b) is buttressed by the fact that in 1951 the Congress, as if in anticipation of appellants' argument here, amended the above-quoted phrase of § 2(b) to read: "which if directly performed by him *or another*". [65 Stat. 717 (1951); italics added.] The Congressional purpose in enacting this amendment was "to * * * make certain the intent to punish [persons embraced within § 2] * * *, regardless of the fact that they may be incapable of committing the specific violation. * * *" [1951 U.S.Code Cong.Service pp. 2578, 2583.]

It has been beyond controversy, then, at least since the 1951 amendment to 18 U.S.C. § 2(b), that the accused may be convicted as causer, even though not legally capable of personally committing the act forbidden by a Federal statute, and even though the agent willfully caused to do the criminal act is himself guiltless of any crime. [See: United States v. Inciso, 292 F.2d 374 (7th Cir. 1961); United States v. One 6.5 mm. Mannlicher-Carcano Military Rifle, 250 F.Supp. 412 (N.D.Tex.1966).]

 Finally, it is said that since acquittal of the police officers negatives any contention that they acted "willfully", it was impossible for appellants as civilians to commit the conspiracy offense of which they stand convicted. [See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).] True it is, of course, that criminal intent is an essential element of each crime charged in the indictment; indeed an essential element of every felony.

 It is but to quote the hornbook to say that in every crime there must exist a union or joint operation of act, or failure to act, and intent. However, this is far from suggesting that the essential element of criminal intent must always

reside in the person who does the forbidden act. Indeed, the latter may act without any criminal intent whatever, while the *mens rea*—"willfulness"—may reside in a person wholly incapable of committing the forbidden act. When such is the case, as at bar, the "joint operation of act and intent" prerequisite to commission of the crime is provided by the person who willfully causes the innocent actor to commit the illegal act. And in such a case, of course, only the person who willfully causes the forbidden act to be done is guilty of the crime.

We can perceive no basis in reason or policy to distinguish a case of willfully causing innocent police officers, "acting under color of law", to deprive another of his civil rights, from a case of willfully causing an innocent bank clerk to mail a fraudulently obtained check [Pereira v. United States, supra, 347 U.S. 1, 74 S.Ct. 358], or causing a lender to make a false report of prices paid for homes [United States v. Selph, supra, 82 F.Supp. 56], or causing a union representative to receive money unlawfully from employers [United States v. Inciso, supra, 292 F.2d 374], or causing a licensed dealer in firearms to fail to maintain required records [United States v. One 6.5 mm. Mannlicher-Carcano Military Rifle, supra, 250 F.Supp. 410].

 Nor do we discern any rationale for refusing, as appellants suggest, to apply the conspiracy statute [18 U.S.C. § 371] to crimes made punishable by 18 U.S.C. § 2(b). So long as anyone who "willfully causes an act to be done" which, "if directly performed by him or another would be an offense against the United States", is punishable as a principal, it follows *a fortiori* that when two or more persons conspire willfully to "cause" an act forbidden by § 2(b), they *ex necessitate* conspire to "commit [an] offense against the United States" within the meaning of 18 U.S.C. § 371.

We read the charge in its entirety and find that the trial judge adequately instructed the jury that, under the evidence in the case, appellants could properly be convicted of conspiring willfully to cause

the police officers, acting "under color of law", to deprive Ratterman of his civil rights.

Of no consequence here is the fact that one reading the record before us might find it difficult, perhaps even impossible, to comprehend how the jury could have acquitted all the police officers of the conspiracy offense. It is not the province of the Court to inquire by what course of reasoning the jury may have reached seemingly inconsistent verdicts. Inconsistency of verdicts as to various defendants in a particular case has always been an exclusive prerogative of the jury. [See: United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48 (1943); Lazarov v. United States, 225 F.2d 319 (6th Cir. 1955); United States v. Austin-Bagley Corp., 31 F.2d 229 (2d Cir. 1929); cf. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Grant v. United States, 255 F.2d 341, 342 (6th Cir. 1958).]

By acquitting the police officers, while convicting appellants of the conspiracy offense, the jury necessarily found that appellants conspired willfully to cause the police officers to act "under color of law" and, while so acting, to make an unlawful arrest of Ratterman, and attempt to bring about a false conviction—all as charged in the conspiracy count of the indictment.

We hold that the evidence in the case fully supports this verdict.

Appellants were fairly tried and fairly convicted. The judgment of the District Court is affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

I am unable to agree with my brothers of the majority.

Count I, under which appellants Lester and Buccieri were convicted, charged that they conspired with the Newport police officer Ciafardini and others to have the latter "while acting in their official capacity * * * *wilfully* deprive George W. Ratterman * * * of the right to be free from arrest by an officer *acting arbitrarily* and without legal justification of cause" and further that the plan of the conspiracy was to have Ciafardini and the other officers arrest Ratterman, charge him with a violation of law and cause his conviction "all knowing him to be innocent."

I read this to mean that appellants conspired with the officers to have these officers *wilfully, arbitrarily* and *without legal justification* arrest Ratterman, even though the officers knew that he had done nothing to warrant such arrest. But the jury found that no such plan was carried out, nor had the officers, the alleged co-conspirators, ever so conspired with appellants.

The government, faced with the jury's verdict acquitting the officers of all misconduct, changes the charge of the indictment to a plan by appellants to have the officers arrest Ratterman not *wilfully and arbitrarily,* but innocently. Its brief to us states the government's position on appeal as follows:

"Accepting the verdict of the jury on its face, it represented a finding that appellants conspired together to deprive Ratterman of his civil rights by causing the police, *as their innocent dupes,* to make an unwarranted arrest of George Ratterman." (Emphasis supplied.)

That, however, is not what the indictment charged. Neither was such a case submitted for the jury's decision. But, even assuming the government's right to assert such a theory, their reasoning will not support the convictions.

Another way of reciting the government's position is to characterize appellants' plan as one to create a situation which would cause police officers, acting innocently and with apparent cause therefor, to make an arrest. Such a plan, however, would not contemplate the accomplishment of a violation of § 242, because to be guilty of such violation it would be necessary that the officers, acting under color of law, "wilfully" subject Ratterman to the deprivation charged. This is not to say that the plan had to be carried

out, because 18 U.S.C. § 371 would be offended by a conspiracy "to *commit* any offense against the United States." However, a § 371 conspiracy must include a plan to have someone "commit an offense against the United States." The only "offense against the United States" which is charged as the subject of the conspiracy is a violation of § 242, which forbids the deprivation "under color of any law * * * of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." Since Ratterman had no right to be free from arrest on probable, though erroneous, cause, the alleged scheme of Buccieri and Lester to create a sham which would lead the officers to innocently arrest Ratterman was not a plan or conspiracy to bring about the commission of this "offense against the United States." Such conduct would indeed be despicable and constitute a crime punishable under the Kentucky statute,[1] but would not add up to the federal offense charged. If the conspiracy was to have the officers, as dupes and acting innocently, arrest Ratterman, it was not a conspiracy to cause a violation of § 242.

I am quite aware of the obviously correct rule that it was not necessary that Buccieri or Lester be themselves capable of committing the substantive offense. United States v. Inciso, 292 F.2d 374 (CA 7, 1961) cert. den. 368 U.S. 920, 82 S.Ct. 241, 7 L.Ed.2d 135; Brown v. United States, 204 F.2d 247, 250 (CA 6, 1953); United States v. Ramey, 336 F.2d 512, 514 (CA 4, 1964); Culp v. United States, 131 F.2d 93, 99 (CA 8, 1942). I find no case, however, holding that a person can be guilty of a § 371 conspiracy where the alleged plan involves no one capable of committing the proscribed act. The officers, as long as they were innocent dupes, could not arrest Ratterman *wilfully* and *without probable cause;* the appellants, as civilians, could not, acting under color of law, arrest Ratterman at all.

The government seeks to support its position by the language of 18 U.S.C. § 2(b), which is as follows:

"Whoever willfully *causes an act* to be done *which* if directly performed by him or another *would be an offense against the United States*, is punishable as a principal." (Emphasis supplied.)

This is merely a codification of the familiar common-law principle, discussed by the majority, that if I make another person my unwitting tool, I am equally guilty as if I had acted directly. I at once repeat, however, that the jury acquitted the appellants as well as the police officers of Count II which charged the officers with the substantive offense and the appellants with aiding and abetting them. The jury's verdict can mean only that the offense described in § 242 was not committed. Therefore, no one *caused* "an act to be done" which was "an offense against the United States." The government says that if the appellants conspired to cause "an act to be done" which if performed by "another," (here the police officers) "would be an offense against the United States," (18 U.S.C. § 2(b)), they were guilty of a conspiracy condemned by § 371. I agree, but the essential ingredient lacking here is the plan to have the "another" commit an "offense against the United States." Further, this case would not even be an appropriate one for the appellee's suggested analysis. Section 242 interposes the federal government between the private citizen and the oppressive exercise of state power. The very vice at which the statute is aimed is the conjunction of evil motive and state power in the offender. Absent this, there is no reason why the federal statute should, or could, be employed.

I recognize that to sustain the conviction of appellants we need not find ration-

1. K.R.S. § 437.150 *Conspiracy to carry on false prosecution.* Any persons who conspire, confederate or bind themselves by oath, covenant or agreement, maliciously to aid one another to carry on or institute a false prosecution in the name of the state against any other person shall be fined one hundred dollars or imprisoned for twelve months, or both.

ality in the jury's acquittal of the officers and its conviction of appellants. United States v. Austin-Bagley Corporation, 31 F.2d 229, 233 (CA 2, 1929); Grant v. United States, 255 F.2d 341, 342 (CA 6, 1958). Neither of these cases, however, dealt with the statute before us, § 242, which requires the confluence of special capacity—"color of law," and malevolent "wilfulness" as prerequisites to the crime. As Judge Learned Hand pointed out in United States v. Austin-Bagley Corp., 31 F.2d 229, 233 (CA 2, 1929): "The verdict must not itself deny the existence of the essential facts". I consider that the jury's verdict acquitting the officers did "deny the existence of [one of] the essential facts," viz: a violation of § 242 or a plan to cause such a violation.

The government speculates that the jury's exoneration of the police officers did not necessarily exhibit a conviction that they were actually innocent of the charged conspiracy. The appellee's brief says,

> "For example, at the time of the trial one of the officers had been made Chief of Police, the jury might well have felt that his conviction, along with that of two other long-time members of the force, for an event which occurred two years in the past, might have a deleterious effect on the morale of the community, * * *. Alternatively, the jury might have been impressed with the presence of the officers' families in the courtroom."

However, such an argument carries the government too far since its reasoning would equally compel the abandonment of the long established rule that a jury may not convict only one of two or more alleged conspirators and exonerate those with whom the convicted one is said to have conspired. The rationale of this rule has been that with the acquittal of the other alleged conspirators, the possibility of establishing one of the "essential facts" of the conspiracy, i. e., the existence of two people who could have agreed, disappears. Cf. United States v. Austin-Bagley, supra, p. 233, and see also cases collected in Annos. 72 A.L.R. 1180, 1182, 1186; 91 A.L.R.(2) 700, 705. The Supreme Court of Tennessee took an analogous position in DeWees v. State, 390 S.W.2d 241, 244 (Tenn.1965) where it held that the acquittal of the only conspirator charged with committing an overt act required the dismissal of all alleged conspirators. Since the jury's verdict denied an "essential fact," i. e., the performance of an overt act by one of the conspirators, the conspiracy charge could not stand. The Tennessee court held that this was so notwithstanding that there was sufficient evidence to support a guilty verdict as to all the conspirators had the jury so found. See also Herman v. United States, 289 F.2d 362, 368–369 (CA 5, 1961). I am aware of the generality that the acquittal of some members of a charged conspiracy does not necessarily forbid conviction of others. Baxter v. United States, 45 F.2d 487, 489 (CA 6, 1930); Langley v. United States, 8 F.2d 815, 819 (CA 6, 1925) and see Anno. 91 A.L.R.2d 700, 713. But such general rule is not controlling here.

The government's brief exposes its position by the assertion that "In the case at bar, we are assuming that the officers *were not involved*." Inasmuch as there was no direct evidence of a conspiracy between appellants and the officers, the existence of it has to be inferred from what the officers did. But the jury found that the officers neither acted in violation of § 242 nor conspired to do so. Assuming a conspiracy between Buccieri and Lester to use the officers to act as *innocent dupes*, the direction of such conspiracy did not contemplate anyone violating § 242.

While they do not deal directly with the question before us, I consider that the United States Supreme Court decisions in United States v. Price, et al., 383 U.S. 787, 86 S.Ct. 1152 (Mar. 28, 1966) (Nos. 59 and 60, Oct. Term, 1965) and United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170 (Mar. 28, 1966) (No. 65, Oct. Term, 1965) support the view that a charge that civilians conspired to violate § 242 would not be sufficient, absent a charge of con-

spiracy or connivance by state agents. In *Guest,* which dealt with the parallel § 241, the Supreme Court held the indictment's charge was good as against a challenge that it involved "wholly private action." The Court said,

> "[T]he allegation is broad enough to cover a charge of active connivance by agents of the State * * * amounting to official discrimination."

and then went on to observe that,

> "Although it is possible that a bill of particulars, or the proofs if the case goes to trial, would disclose no cooperative action of that kind by officials of the State, the allegation is enough to prevent dismissal of this branch of the indictment." (383 U.S. 757, 86 S.Ct. 1177)

I cannot infer from this otherwise than that a lack of an allegation or proof of "connivance by agents of the state" would vitiate a conviction of violation of § 241 and that such view would apply as well to a § 242 charge. That such was the direction of the majority of the court in *Guest* is emphasized by the partial dissent where Mr. Justice Brennan expresses his understanding of the majority holding,

> "I understand this to mean that, no no matter how compelling the proofs that private conspirators murdered, assaulted, or intimidated Negroes * * the prosecution under the second numbered paragraph must fail in the absence of proofs of active connivance of law enforcement officers with the private conspirators in causing the false arrests." (383 U.S. 776, 86 S.Ct. 1188)

I have studied the many other authorities cited in the briefs before us. I do not discuss them because they do not provide clear precedential guidance.[2] It will be sufficient to say that, in my view, the statements therein which appear to give surface support to the government's position are inapposite because of their differing factual contexts. None deal relevantly with the special character of § 242 which permits the federal government to punish conduct normally punishable as a state matter when such conduct can be viewed as state action violative of the guarantees of the Fourteenth Amendment. I, therefore, write in dissent on the basis of the unambiguous language of the statutes involved.

I regret that I cannot join in sustaining the convictions of appellants. Appellants denied that they were the authors of Ratterman's arrest and charged that his consumption of Scotch whiskey and a willing approach to the lady known as April Flowers brought on his woe. But there was abundant evidence from which the jury could find that they wickedly conspired to disgrace Ratterman; that *Lester, as a lawyer, suborned perjury;* and that both, by malicious artifice, led the officers to arrest the innocent Ratterman. Such conduct would clearly offend state criminal statutes. Dealing with a like situation, the United States Supreme Court in Parr v. United States, 363 U.S. 370, 393, 394, 80 S.Ct. 1171, 1184, 1185, said,

> "The strongest element in the Government's case is that petitioners' behavior was shown to have been so bad and brazen, which, coupled with the inability or at least the failure of the state authorities to bring them to justice, doubtless persuaded the Government to

**2.** Among others, Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206; Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277; United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 59 L.Ed. 504; Berger v. United States, 295 U.S. 78, 81, 55 S.Ct. 629, 79 L.Ed. 1314; Boushea v. United States, 173 F.2d 131 (CA 8, 1949); Kaufman v. United States, 212 F. 613 (C.C.A.2, 1914); Cohen v. United States, 157 F. 651 (C.C.A.2, 1907); Lazarov v. United States, 225 F.2d 319, 321 (CA

6, 1955); Joyce v. United States, 153 F. 2d 364, cert. den. 328 U.S. 860, 66 S.Ct. 1349, 90 L.Ed. 1631; United States v. General Motors, 121 F.2d 376, 411 (CA 7, 1941); American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233, 253 (1942); United States v. Selph, 82 F.Supp. 56, 58, 59 (D.C. S.D.Cal., 1949); Kaplan v. United States, 7 F.2d 594, 596 (CA 2, 1925); Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356.

undertake this prosecution. But the showing, however convincing, that state crimes * * * were committed does not establish the federal crime * * * and, under our vaunted legal system, no man, however bad his behavior, may be convicted of a crime of which he was not charged, *proven and found guilty in accordance with due process.*" (Emphasis supplied.)

I would reverse the judgment of the District Court with direction to acquit and discharge the appellants.