893 F.2d 1335
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Susan BROOKS, Defendant-Appellant.
 No. 89-5500.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Traveling by airplane, defendant Susan Brooks ("Brooks") transported cocaine from Los Angeles, California to Memphis, Tennessee. On November 8, 1988, Brooks was charged in a one count indictment with possession with intent to distribute two kilograms of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). A jury trial commenced on January 9, 1989. On January 12, 1989, the jury returned a verdict of guilty on the one count indictment. On April 7, 1989, Brooks was sentenced to seventy-eight months of incarceration followed by three years of supervised release.[1] Brooks appeals from the April 12, 1989 judgment and commitment orders of the district court. For the reasons set forth below, we AFFIRM.
 
 I.
 
 2
 At approximately 7:30 a.m., on October 31, 1988, plainclothes Officers Reginald Drake ("Officer Drake") and Steve Cook ("Officer Cook"), of the Memphis International Airport Police Department, were approached by Brooks, who had recently arrived in Memphis via Northwest flight 290 from Los Angeles. In the airport gate area, Brooks asked Officer Drake his name. He replied "Richie." Brooks then walked away to use a public telephone.
 
 
 3
 When Officers Drake and Cook walked toward the baggage area, they again saw Brooks at the public telephone. She asked Officer Drake if he was looking for someone. Officer Drake responded that he was not and walked off.
 
 
 4
 After their two encounters with Brooks, Officers Drake and Cook decided to question her. They approached Brooks in the baggage area and identified themselves as police officers. Brooks agreed to talk with them and produced an airline ticket and a claim check. Officer Drake identified the ticket as bearing the name Susan Brooks; displaying an itinerary from Los Angeles to Memphis; and having been purchased with $198.00 in cash. When Officer Drake asked Brooks for her driver's license, she hesitated but eventually produced the license. According to Officer Drake's trial testimony, Brooks responded to his questions by arguing: first, that even though she had a claim check, she did not have any bags; second, that "Maybe the airline people in Los Angeles checked my bag through as--checked one that belonging [sic] to somebody else ..."; and third, that "If I have any bags and if something is wrong with them, somebody put something in them." Joint Appendix at 25.
 
 
 5
 After this initial questioning of Brooks, Officers Drake and Cook briefly left her alone to pursue other suspects. When they returned, Brooks was standing near the baggage carousel. Officer Drake was unable to find a suitcase that matched the claim check on Brooks' ticket. A brown suitcase, however, remained alone on the baggage carousel. After finding that the brown suitcase had no identification on it, Officer Drake took it to an airline representative and explained the situation. Based on his eight years of airport police experience, Officer Drake thought it strange that the suitcase had no baggage receipt nor other form of identification.
 
 
 6
 Officer Drake advised Brooks that he was still investigating the matter of the brown suitcase. She voluntarily accompanied him to the back of the baggage area. Officer Drake then summoned a police dog, who indicated that narcotics were in the suitcase. After obtaining a search warrant, Officers Drake and Cook searched the suitcase and found two packages of cocaine.[2]
 
 
 7
 As the investigation continued, Lieutenant Beverly Archer ("Lt. Archer"), of the Shelby County Sheriff's Department and the Memphis International Airport Drug Task Force, began to search the baggage area and ladies' room for a baggage receipt that would correspond to Brooks' claim check. In a trash can in the Northwest baggage area, Lt. Archer found a baggage receipt and a slip of paper showing the name "Susan Brooks." In her trial testimony, Lt. Archer identified the number on the baggage receipt that she found in the trash can, # 208820, as being the same number that appeared on the claim check obtained from Brooks by Officer Drake.
 
 
 8
 Special Agent Henry Baker ("Agent Baker"), of the Memphis office of the United States Drug Enforcement Administration ("DEA"), joined Officers Drake and Cook in their interrogation of Brooks. After Agent Baker read Brooks her Miranda rights, she indicated that she did not have anything to say. Brooks continued, however, to make statements. When Agent Baker again read Brooks her Miranda rights and advised her to be quiet, she indicated her willingness to cooperate with the government. Brooks admitted to Agent Baker that she brought the brown suitcase to Memphis. Brooks indicated that she was to turn the suitcase over to her cousin and another individual. She denied knowing that there was cocaine in the suitcase, but admitted that she knew a cocaine deal was to take place. When Agent Baker allowed Brooks to call Los Angeles, she advised the party on the other end of the telephone that they "have me here" and that "they know he sent the drugs and they want his last name." Brooks later explained to Agent Baker that "the bitch wouldn't give up her boyfriend." Joint Appendix at 96.
 
 II.
 A.
 
 9
 On appeal, Brooks initially argues that the district court erred in allowing Officer Drake to read the contents of the airline ticket into evidence. Brooks also contends that the court erred in admitting Officer Drake's nonexpert opinion testimony that based upon his experience as an airport police officer, he considered it strange that the brown suitcase was found without identification. Nonexpert opinion testimony, however, may be admitted where the opinion is "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony." Fed.R.Evid. 701. See also United States v. McCullah, 745 F.2d 350, 352 (6th Cir.1984). When Officer Drake read aloud that portion of the airline ticket which contained Brooks' name, itinerary and the amount of her fare, his testimony was clearly based on his own perceptions and enhanced the jury's understanding of his previous statements. In addition, Officer Drake's eight years of service as an airport policeman allowed him to speak from his knowledge of airport operations and to observe that a suitcase normally cannot be flown from Los Angeles to Memphis without a baggage receipt or some other form of identification. Moreover, given Brooks' pretrial admissions that she traveled on Northwest flight 290 and that she brought the brown suitcase from Los Angeles to Memphis, Officer Drake's testimony cannot be deemed prejudicial.[3]
 
 B.
 
 10
 Brooks next contends that the district court erred by denying her motion for a mistrial after Officer Drake gave hearsay responses to the following cross-examination question:
 
 
 11
 DEFENSE COUNSEL: But there was nothing inside the suitcase to indicate ownership of it?
 
 
 12
 OFFICER DRAKE: Okay, there wasn't nothing in the suitcase that indicated ownership, but while I was in the U.S. Attorney's Office getting a search warrant, a bag tag matching the envelope and the name given me of the defendant, Susan Brook's name, was found in a nearby garbage can ...
 
 
 13
 Joint Appendix at 56. After defense counsel moved to strike Officer Drake's answer as hearsay, the district court instructed Officer Drake that he would not be able to discuss what happened with respect to other individuals. Defense counsel subsequently moved for a mistrial.
 
 
 14
 In United States v. Atisha, 804 F.2d 920 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987), we explained that "a determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion." Id. at 926. If a trial is not rendered fundamentally unfair by the district court's admission of challenged evidence, then we will not hold that the court abused its discretion by denying defendant's motion for a mistrial. See id. at 927. See also United States v. Faulkenbery, 472 F.2d 879, 882 (9th Cir.) (court of appeals may reverse a denial of a mistrial motion only upon a showing of abuse of discretion), cert. denied, 411 U.S. 970 (1973).
 
 
 15
 In the present case, it is undisputed that Officer Drake offered hearsay testimony concerning Brooks' ownership of the brown suitcase containing cocaine. Officer Drake's hearsay testimony, however, did not render Brooks' trial fundamentally unfair. Lt. Archer provided direct testimony that she personally searched the trash and found the baggage receipt that corresponded to Brooks' claim check. Assuming, arguendo, that Lt. Archer's testimony was insufficient to prove Brooks' ownership of the suitcase, Brooks admitted in her pretrial statements that she brought the suitcase to Memphis. Because defense counsel opened the area of inquiry and Officer Drake's hearsay testimony that the suitcase belonged to Brooks' was confirmed by the subsequent direct testimony of others, there was no reversible error and the district court did not abuse its discretion by denying the motion for mistrial. See United States v. Marlar, 668 F.2d 972, 973 (8th Cir.1982).
 
 C.
 
 16
 Brooks then argues that the district court erred in charging the jury. Initially, Brooks contends that the district court erred by giving the jury instructions concerning the aider and abettor statute. Brooks' argument, however, misanalyzes the decision of this court in United States v. Lester, 363 F.2d 68 (6th Cir.1966), cert. denied, 385 U.S. 1002 (1967). In Lester, we explained that:
 
 
 17
 [I]t has long been held that an indictment need not specifically charge "aiding and abetting" or "causing" the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either. All indictments must be read in effect, then, as if ... 18 U.S.C. Sec. 2 [was] embodied in each count thereof.
 
 
 18
 363 F.2d at 72. See also 18 U.S.C. Sec. 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."). Given the well-settled law of this circuit, the district court did not err in giving instructions which allowed the jury to find Brooks guilty if she met the requirements of aiding and abetting the offense.
 
 
 19
 Brooks also argues that the district court erred in giving the jury a "willful blindness" instruction. This court, however, has repeatedly approved the use of the willful blindness instruction "on the basis that it prevents a criminal defendant from escaping conviction merely by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." United States v. Holloway, 731 F.2d 378, 381 (6th Cir.1984), cert. denied, 469 U.S. 1021 (1984). See also United States v. Gullett, 713 F.2d 1203, 1212 (6th Cir.1983), cert. denied, 464 U.S. 1069 (1984). In addition, the facts of this case clearly justify the district court's use of the willful blindness instruction. Brooks admitted to Agent Baker that she brought the brown suitcase to Memphis; that she knew a cocaine deal was to take place; and that her role was to give the suitcase to her cousin in Memphis and to pick up the money and return it to Los Angeles. Brooks then stated to Agent Baker that she did not know that cocaine had been placed inside the brown suitcase.[4] Given the established precedents of this circuit and the absence of credibility in Brooks' testimony, the district court did not err in giving the willful blindness instruction to the jury.
 
 D.
 
 20
 Brooks next contends that the district court abused its discretion by refusing to make a downward departure from the Sentencing Guidelines ("Guidelines") when it sentenced her to seventy-eight months imprisonment. Brooks argues that her lengthy prison sentence was unreasonable because, construing the evidence in the light most favorable to the government, she was merely acting as a drug courier; had no substantial prior record; and is responsible for the care of two minor children.
 
 
 21
 At Brooks' sentencing hearing on April 7, 1989, the district court found that the information in the presentence report was accurate, and that a downward departure from the Guidelines was not warranted. The court explained:
 
 
 22
 THE COURT: [I]n considering whether or not the Court should depart from the [G]uidelines, the nature of this offense must be considered. This is a serious offense involving the transportation of a large amount of cocaine. It is the kind of offense that is clearly known to be wrong, known to be illegal to everybody who gets involved in an offense of this type.
 
 
 23
 Certainly, the couriers are to some extent victimized by the people who hire them, but it is important that the couriers, the people like you, Ms. Brooks, ... be discouraged from doing what you did in this case and realize that their behavior is very, very wrong.... [T]he very serious nature of this offense, I think, means that considerations like family responsibilities just simply become less important than making sure that the crime is appropriately punished.
 
 
 24
 * * *
 
 
 25
 The Court will sentence Ms. Brooks to the minimum [G]uidelines sentence of seventy-eight months. I believe in light of Ms. Brooks' background, the minimum sentence is appropriate.
 
 
 26
 Joint Appendix at 126-27.
 
 
 27
 In United States v. Sailes, 872 F.2d 735 (6th Cir 1989), this court held that a district court did not err by refusing to depart downward from the Guidelines where a mother of minor children plead guilty to aiding and abetting possession, with the intent to distribute, 500 grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). See id. at 736. Our holding in Sailes rested, in part, upon Section 5H1.6 of the Guidelines, which states that family responsibilities are ordinarily not relevant in determining whether a sentence should be imposed outside of the Guidelines. See Sailes, 872 F.2d at 739.
 
 
 28
 In the present case, our review of the district court's findings and conclusions with respect to Brooks' sentence persuades us that the court considered the totality of the circumstances and did not abuse its discretion in refusing to make a downward departure from the Guidelines. See United States v. Perez, 871 F.2d 45, 47 (6th Cir.1989) (limiting appellate review of sentencing to a determination of whether the district court abused its discretion or made clearly erroneous findings of fact), cert. denied, 109 S.Ct. 3227 (1989). See also United States v. Smith, 887 F.2d 104, 108 n. 6 (6th Cir.1989) (determining that mitigating circumstances raised by defendant did not compel the district court to make a downward departure form the applicable Guidelines range). The district court appropriately weighed the issue of Brooks' family responsibilities against the countervailing considerations of the large amount of cocaine involved in this case, and the need to impose harsh punishment to discourage others from participating in the trafficking of cocaine, a serious and socially destructive offense. Although the district court refused to make a downward departure from the Guidelines, Brooks did receive the minimum Guidelines sentence. As in Sailes, there is no justification for this court to displace the sentencing discretion exercised by the district court.
 
 
 29
 For all of the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 Brooks was also required to pay the United States a $50.00 special assessment fee
 
 
 [2]
 Harold Frank Hanel, a DEA forensic chemist testified at trial that the two packages found in the brown suitcase by Officers Drake and Cook contained slightly over two kilograms of 88% pure cocaine hydrochloride
 
 
 [3]
 Brooks advances a similar argument that the district court erred in admitting Agent Baker's testimony as to the practices of drug couriers in packing suitcases. Brooks specifically contends that Agent Baker provided inadmissible nonexpert opinion testimony. Agent Baker's testimony, however, was not the expression of an opinion, but was a recitation of his observations during sixteen years of DEA service. Agent Baker stated that during his past year of work at the Memphis airport, he had over one hundred encounters with drug couriers. Agent Baker explained that drug couriers will often pack heavy clothing, as well as children's clothing, to prevent their drug packages from moving around and to be ready to disown their suitcases. Agent Baker's statements were not offered as expert testimony, but as testimony based on his employment experience and personal knowledge. Moreover, the statements of Agent Baker were introduced primarily to rebut issues raised by defense counsel that the brown suitcase could not have belonged to Brooks because it contained children's clothing. Accordingly, the district court did not err in admitting Agent Baker's testimony
 
 
 [4]
 The facts of this case also clearly rebut Brooks' claim that the district court erred in denying her motion for a judgment of acquittal. See Fed.R.Crim.P. 29. Brooks maintains that the only proof that the government produced to connect her with the cocaine in the brown suitcase was her claim check which corresponded to a matching baggage receipt found in the trash. The government, however, also presented evidence of Brooks' pretrial admissions, as well as the testimony of Officers Drake and Cook, Lt. Archer and Agent Baker
 In United States v. Schultz, 855 F.2d 1217 (6th Cir.1989), we considered a district court's denial of a motion for judgment of acquittal and explained our standard of review:
 [W]e must view the evidence ... in the light most favorable to the government. Witness credibility is solely within the province of the jury. To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilt. We must affirm a conviction if any rational trier of fact could have found defendant guilty beyond a reasonable doubt.
 Schultz, 855 F.2d at 1221 (citations omitted). In the case at bar, we are persuaded that the government presented sufficient evidence from which a rational jury could have concluded that Brooks knew she was involved in a cocaine deal; knew her role in the deal; and knew that she was bringing two kilograms of cocaine to Memphis for subsequent distribution. Thus, the district court did not err in denying Brooks' motion for a judgment of acquittal.