**UNITED STATES of America**

v.

**Fred McCURRY.**

**No. 12133.**

United States Court of Appeals
Third Circuit.

Argued June 7, 1957.

Decided Sept. 5, 1957.

Rehearing Denied Oct. 18, 1957.

Mark Charleston, Philadelphia, Pa., for appellant.

Warren D. Mulloy, Asst. U. S. Atty., Philadelphia, Pa. (G. Clinton Fogwell, Jr., U. S. Atty., West Chester, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Following a jury trial defendant was found guilty and sentenced for violation of 18 U.S.C. § 2313 [1] upon an indictment which charged him with receiving and selling stolen motor vehicles, moving in interstate commerce, knowing them to have been stolen. He prosecutes this appeal from the Order of the District Court denying his motion for judgment of acquittal or for a new trial [2] on the ground that there was insufficient evidence from which the jury could infer that he knew at the time he purchased or sold the vehicles that they were in fact stolen.

An essential element of proof of a violation of 18 U.S.C. § 2313 is that the defendant knew that the vehicles he dealt with were stolen, but it is clear that such knowledge may be proved by circumstantial evidence. Schwachter v. United States, 6 Cir., 1956, 237 F.2d 640; United States v. Angel, 7 Cir., 1953, 201 F.2d 531; United States v. Bucur, 7 Cir., 1952, 194 F.2d 297. Such circumstantial evidence must be considered in a light most favorable to the Government in view of the jury's verdict. United States v. Yager, 7 Cir., 220 F.2d 795, certiorari denied, 1955, 349 U.S. 963, 75 S. Ct. 895, 99 L.Ed. 1285; United States v. Kemble, 3 Cir., 1952, 197 F.2d 316.

The evidence with respect to defendant's knowledge may be summarized as follows:

---

1. "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. The District Court's opinion is reported at 146 F.Supp. 109 (E.D.Pa.1956).

Four 1952 Cadillac automobiles were stolen in New York during August and September of 1953. In accordance with the laws of the State of New York each of the automobiles was registered by presenting to the Motor Vehicle Bureau registration renewal stubs bearing validating stamps. Registration certificates were issued in the name of Samuel Reiner, Louis Horwood, Max Feinberg, and Murray Mayer. It was later determined that the four names submitted on the registration renewal stubs were fictitious and that the validating stamps were forged.

Defendant was a Studebaker dealer in Philadelphia and prior to the transactions here involved never had purchased a Cadillac from an out-of-town owner. However, within a period of about five weeks he purchased the four stolen Cadillacs from admitted strangers, in each case within several days after the theft had taken place. He made each of the purchases without attempting to verify the identity of the seller against the registration certificates, nor did he seek an explanation from the seller as to why he was selling his car only a few days after acquiring it—a fact which was indicated on the registration certificate.

There was ample evidence from which the jury could have found that defendant actually paid a much lower price for the Cadillacs than the "fair and reasonable market price" he contended he paid. With respect to the Reiner Cadillac two checks were drawn to the order of Samuel Reiner. The first check in the amount of $800.00 was endorsed by Samuel Reiner and by McCurry Motors, Inc. The second check was in the amount of $2,500 and was endorsed by Reiner and by defendant's bookkeeper, Elizabeth McElwee. The perforation on the checks indicated that they were both cleared through the Second National Bank on August 13, 1953, and from the fact that her signature appeared on the back of the $2,500 check, Mrs. McElwee was able to determine that she had personally cashed the check at the bank.

Defendant testified that the seller wanted cash and that he drew two checks rather than one in order to use $800 cash he had on hand as part of the payment. The $2,500 check was drawn to pay Reiner in full, this amount being drawn from the bank by Mrs. McElwee. However, defendant did not verify Reiner's endorsement against any identification even though the Reiner endorsements appeared to vary on the two checks.

With respect to the Horwood Cadillac, two checks both payable to Louis Horwood, were issued by defendant. One in the amount of $1,800 was dated August 27, 1953, and the other in the amount of $1,550, August 28, 1953. They were negotiated on August 27, 1953 and August 31, 1953, respectively. Defendant testified that he drew two checks because Horwood wanted cash; he said he only had $1,800 in cash available at the time and the $1,800 check was designed to establish the payment of that sum to Horwood. It was his recollection that it was too late in the day to go to the bank. He further testified that the next day Horwood came back and picked up the balance of the cash, $1,550, the check in that amount reflecting the withdrawal from the bank. He admitted that the endorsement on both checks and his own signature appearing on the face of each of them were all written in green ink and with the same pen, and while he also stated that the difference in the handwriting on the backs of the checks could indicate that the endorsements had been made by different individuals, he later said he thought they had been made by Horwood. Defendant's explanation as to why he drew two checks could not be reconciled with the fact that the $1,800 check had been cleared by the bank on the day it was drawn, August 27th, even though he had earlier stated that the bank was closed on that day.

Defendant testified that he did not issue checks as payment for the Feinberg and Mayer Cadillacs, but paid for both automobiles with his personal cash

because they were purchased during a period when his bookkeeper was on vacation. The testimony of the bookkeeper as to the time she was on vacation contradicted defendant's testimony on that score. Defendant also denied the testimony of another witness that a woman had driven the Feinberg Cadillac into his place of business.

That defendant was aware of the source of the Cadillacs is evidenced by the testimony of a prospective purchaser that defendant told him that he expected receipt of a green Cadillac Coupe de Ville. The statement as to the expected receipt is illuminating in view of defendant's testimony that all the sellers of the Cadillacs were strangers up to the day they came to his place of business. The green Cadillac, incidentally, was purchased and sold by defendant.

The testimony as to the Mayer Cadillac is especially significant. While defendant claimed that he had sold that automobile to an apparently non-existent Joseph Palmer on September 12, 1953, prior to the day he was first directly informed that stolen Cadillacs were being investigated, the testimony of several witnesses was in flat contradiction. When special agents visited defendant on September 15, 1953, he stated that he had not purchased any Cadillacs other than the Reiner Cadillac. One Anthony Cavelli testified that he had carried on negotiations with defendant for the purchase of the Mayer Cadillac as late as September 15th. Defendant's sales manager placed the automobile in his shop as late as the 14th. William J. Laffey, proprietor of the Northeast Tag Service, testified that Pennsylvania title to the car in the name of McCurry Motors, Inc. was obtained through him by defendant. The title was dated September 15, and from his knowledge of the operation of the Bureau of Motor Vehicles, Laffey testified that the earliest date defendant could have received the title to the automobile was on September 16th. All this testimony was overwhelming in light of the defendant's claim that he had disposed of the Mayer Cadillac on September 12th, prior to the time he was first informed that it was a stolen automobile.

■ The record discloses additional testimony in support of the jury's verdict. Defendant's contentions with respect to the evidence merely attempt to set forth a theory of his conduct consistent with innocent knowledge. They were rejected by the jury upon what is plainly ample evidence.

For the reasons stated the judgment of the District Court and its order denying defendant's motion for judgment of acquittal or for a new trial will be affirmed.