**UNITED STATES of America**

v.

**Rudolph E. BOYANCE et al.**
**Herman Myron Feldman, Appellant.**
**No. 14442.**

United States Court of Appeals
Third Circuit.

Argued Nov. 6, 1963.

Decided March 26, 1964.

Certiorari Denied June 8, 1964.
See 84 S.Ct. 1645.

Michael A. Querques, Orange, N. J. (Daniel E. Isles, Orange, N. J., on the brief), for appellant.

Lawrence Prattis, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before STALEY, HASTIE and SMITH, Circuit Judges.

STALEY, Circuit Judge.

The appellant Herman Myron Feldman was tried and convicted on an indictment charging him and seven other persons with conspiring to utter or deal in counterfeit obligations, 18 U.S.C. § 371.[1] The obligations specified as the subject of the conspiracy were forged and counterfeited $20 Federal Reserve notes. Though other defendants were also charged with the substantive offenses of uttering or dealing, we are concerned on this appeal only with the count charging Feldman as a conspirator.

Prior to trial three of the defendants pleaded guilty to this charge, and some of them testified against the five remaining defendants. The jury returned a verdict of guilty against four of those tried, including Feldman.[2] Only he has appealed from the judgment of conviction.

The evidence adduced at trial tended to establish that several of the defendants had engaged in the conspiracy as charged. The sufficiency of that evidence to prove the guilt of the defendants to whom it related is not challenged in this court.[3] However, the appellant vigorously challenges the adequacy of the proof to establish his connection with the conspiracy. We turn then to a consideration of that evidence.

The theory of the Government was that Feldman was the source of the counterfeit notes which were uttered by the other parties to the conspiracy. The only direct testimony in the case against him was given by Albert Wood, who stated that he was an undercover agent or paid informer employed by the United States Secret Service. Wood was brought to Philadelphia from Detroit by one of

---

1. Numerous acts, any of which constitute the substantive offenses of uttering or dealing are set forth in 18 U.S.C. §§ 472, 473 and in the indictment.

2. The district court denied Feldman's motions for a judgment of acquittal or a new

trial. United States v. Boyance, 215 F. Supp. 390 (E.D.Pa.1963).

3. Indeed, in his brief appellant relates that counterfeit notes were passed in Bristol, Horsham, and Lansdale, Pennsylvania, and that such notes had been transferred in Chalfonte, Pennsylvania.

the defendants in June of 1961 after he had made known his desire to obtain counterfeit $20 notes. A meeting was arranged by several of the defendants for completing a purchase of the notes in Newark, New Jersey, but these efforts proved abortive when the person who was to supply them failed to appear at the designated meeting place. Several additional efforts to negotiate a sale met with a similar result.

Subsequently, Wood was introduced to the defendant Ellis by one of the conspirators. Ellis stated that he was the only person who could arrange a sale of the counterfeit $20 notes. On July 5, 1961, he accompanied Wood on a trip to New York and placed phone calls from a hotel there to a telephone number in East Orange, New Jersey. That number was later identified through telephone company records as being listed under Feldman's name. During the course of one of those conversations, Ellis directed Wood to write down the address "180 Prospect Street, East Orange, New Jersey." The two men then drove to that address and entered an apartment which had the name "H. Myron Feldman" on the doorbell. Wood testified that Ellis greeted the person who answered the door as "Mootsie." [4] According to Wood, Feldman stated that he knew they were there for the "twenties," and during the ensuing conversation declared that he had "disbursed over a half million dollars' worth of these twenties." However, when Feldman said that he would "deal" only if Wood first deposited an amount of cash with him, Wood indicated that it would be necessary for him to obtain the approval of his principal in Detroit. Wood and Ellis then returned to their hotel in New York, where Wood made a telephone call purporting to obtain approval of the transaction. Ellis then phoned Feldman and completed arrangements for the pur-

chase. However, when Wood met Ellis the following day to make the requested deposit of cash, the latter informed him that there would be no deal.

■■ Feldman contends that the evidence established several unrelated conspiracies among various groups of the defendants, rather than the single conspiracy charged in the first count of the indictment. In a similar vein, he asserts that there was no proof of any activity on his part in furtherance of the conspiracy charged, since the transaction alleged to have been discussed in his apartment was never consummated.

Of course, in considering the sufficiency of the proof to establish Feldman's connection with the conspiracy, we must view the evidence, including the testimony of Wood, together with all inferences reasonably and logically deducible therefrom, in the light most favorable to the Government since the jury has returned a verdict of guilty. United States v. Minker, 312 F.2d 632 (C.A.3, 1962), cert. denied, 372 U.S. 953, 83 S. Ct. 952, 9 L.Ed.2d 978 (1963); United States v. Carlucci, 288 F.2d 691 (C.A. 3), cert. denied, 366 U.S. 961, 81 S.Ct. 1920, 6 L.Ed.2d 1253 (1961); United States v. Giuliano, 263 F.2d 582 (C.A. 3, 1959). The record discloses that several of the defendants attempted to obtain counterfeit $20 notes from a source in New Jersey on several occasions.[5] Moreover, the evidence shows that one of these defendants, whose role in the conspiracy is not challenged in this court, introduced Wood to Ellis following the unsuccessful attempt to execute a purchase in Newark, New Jersey. Ellis boasted that he was the only person who could arrange a sale, and his relationship with Feldman was established by direct testimony. The Government introduced the records of telephone calls not only between Ellis and Feldman, but between Ellis and another of the defend-

4. Though this name also appears in the trial transcript at several points as "Muzzy," it is not contended that the variance is significant.

5. In addition to the efforts in which Wood was involved, Carmen Motto, another Government undercover agent, testified to an unsuccessful attempt by Ellis to arrange a sale to him in New York City.

ants during the period when the former was attempting to arrange a sale of the notes to Wood. We need not here again recite the testimony of the discussion of the "twenties" in Feldman's apartment, but need only state that this testimony, coupled with the circumstances we have related, provided a sufficient evidentiary basis for the jury to find that this incident was a part of the larger criminal enterprise charged in the indictment, rather than a separate, isolated occurrence. We might note here that the district court in its charge left this question to the jury under lucid and specific instructions.[6]

In this setting, Feldman's reliance on Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in support of his multiple conspiracy argument is misplaced. As the first sentence of the opinion of the Court in that case indicates, the Government there admitted that the evidence established several conspiracies rather than the single general conspiracy charged in the indictment. The question, answered by the Court in the affirmative, was whether this resulted in substantial prejudice to the petitioners. The matter sub judice is more analogous to Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947), which deals with the sufficiency of the evidence to establish a single conspiracy. See also, United States v. Lester, 282 F.2d 750 (C.A.3, 1960), cert. denied, 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368 (1961).

Our conclusion on this score also effectively disposes of the contention that there was no proof of any conspiratorial activity by Feldman because he withdrew from the proposed sale to Wood. Since the proof was sufficient to implicate him in the more general conspiracy with which he was charged, the undisputed overt acts of his co-conspirators are attributable to him. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Hernandez v. United States, 300 F.2d 114, 122 (C.A.9, 1962); United States v. Lester, supra. The same considerations apply to the argument that the district court lacked jurisdiction over Feldman because his criminal activity was confined to East Orange, New Jersey, for it is not contested that several overt acts of the other conspirators occurred within the Eastern District of Pennsylvania.

During the course of the trial several of the witnesses testified over the objection of the defense to statements heard by them which implicated "Mootsie" in the conspiracy. Neither the Government nor the district court denied the hearsay character of these statements. However, this testimony was admitted into evidence with the cautionary instructions, repeated frequently by the district court throughout the trial, that it was to be considered only against the party who made the statement or in whose presence it was made unless and until independent evidence was adduced implicating Feldman in the conspiracy.

---

**6.** On this point the district court charged:

"If you find from the evidence that has been submitted to you that there was a conspiracy, a common plan and undertaking, the purpose of which was to defraud the United States by intending to pass, utter and publish counterfeit $20 Federal Reserve notes and by intending to deal in counterfeit $20 bills by buying, selling, exchanging, transferring or delivering such counterfeit bills, with the intent that they be passed and used as true and genuine, then any of the defendants as to whom you are satisfied beyond a reasonable doubt took part in that scheme and conspiracy you may convict as members of that conspiracy.

"If, of course, you are not satisfied beyond a reasonable doubt that there was a conspiracy at all, then all of the defendants are entitled to be acquitted on Count 1.

"If you find that one or more of the defendants committed certain acts, but were not members of the conspiracy charged, but were, in fact, members of a separate conspiracy not charged, then you should return a verdict of not guilty as to that defendant or those defendants whom you find not to be members of the conspiracy which has been charged in the indictment."

The appellant concedes that the admission of this evidence was prejudicial only if there was no evidence *aliunde* of his participation in the criminal enterprise. Since we have already concluded that such evidence was adduced, this argument must fail. Indeed, once Feldman was linked to the conspiracy by independent evidence, these statements which, of course, were in furtherance of the conspiracy and were made before its termination were admissible as competent and substantial evidence against him. Lutwak v. United States, 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953). See also, Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L. Ed.2d 278 (1957).[7]

■ During the cross examination of Wood, defense counsel was permitted to examine and make use of a statement which that witness had given orally to the Secret Service. No significant inconsistencies were developed between that statement and Wood's testimony at the trial. Counsel then asked that he be permitted to examine Wood's testimony before the Grand Jury in order to determine whether there were any inconsistencies with that given at trial. When this was denied, the court was requested to make such an examination. This request was likewise denied. Feldman contends that this refusal by the district court constitutes reversible error.

The law on the right of the defense in a criminal proceeding to examine Grand Jury testimony or to have the trial judge do so is somewhat unclear. In its most recent decision on this question, the Supreme Court has held that the defense has the burden of showing a "particularized need" for Grand Jury testimony. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L. Ed.2d 1323 (1959). However, the Court held that a preliminary showing of contradiction would not be necessary. The question of whether the trial judge is re-

quired to examine the transcript for inconsistencies upon request was expressly left open since no such request had been made in that case. 360 U.S. at 401, 79 S. Ct. 1237, 3 L.Ed.2d 1323.

The Court of Appeals for the District of Columbia, and the Fourth, Eighth, and Tenth Circuits appear to require a showing of particularized need before the transcript must be examined, although the circumstances which have been found to establish such an exigency are varied. Gordon v. United States, 112 U.S.App.D. C. 33, 299 F.2d 117 (1962); Jackson v. United States, 111 U.S.App.D.C. 353, 297 F.2d 195 (1961); Debinder v. United States, 110 U.S.App.D.C. 244, 292 F.2d 737 (1961); Hance v. United States, 299 F.2d 389, 398 (C.A.8, 1962); Bary v. United States, 292 F.2d 53 (C.A.10, 1961); Pittsburgh Plate Glass Co. v. United States, 260 F.2d 397 (C.A.4, 1958), aff'd, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). See also Beatrice Foods Co. v. United States, 312 F.2d 29, 38 (C.A.8), cert. denied, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963). The fact that the testimony sought to be examined is that of the sole or most important witness in the case against the defendant is deemed significant. Gordon v. United States, supra.

On the other hand, the Second Circuit appears to require no showing of a particularized need, unless the mere fact that the witness has testified before the Grand Jury can be held to establish this. The essence of the rule in that Circuit is contained in the following excerpt from United States v. Giampa, 290 F.2d 83, 85 (C.A.2, 1961):

> "* * * If the Government calls a witness who has given testimony before a Grand Jury, it is under a duty to have the transcript of such testimony available upon the trial. If it is then established at the trial that the witness has testified before the Grand Jury and defense counsel

---

7. Professor Wigmore points out that this is not an exception to the hearsay rule, but is a part of the substantive law of

conspiracy. 4 Wigmore, Evidence § 1079; 6 id. § 1769 (3d ed., 1940).

requests that the trial court examine the minutes for inconsistencies in testimony given upon the trial and before the Grand Jury, the trial court should read the minutes and if inconsistencies be found should make such portions of the minutes available to defense counsel. * * *"

But see the following Second Circuit cases in which the right to an examination appears to have been premised on the fact that the Grand Jury testimony was that of the sole direct witness in the case against the defendant: United States v. Hernandez, 282 F.2d 71 (C.A. 2, 1960), reh. denied, 290 F.2d 86 (C.A.2, 1961); United States v. Zborowski, 271 F.2d 661, 666 (C.A.2, 1959). As we have seen, this broad rule has been rejected by the Court of Appeals for the District of Columbia and by the Fourth, Eighth and Tenth Circuits. It should be noted that this court in a per curiam decision based upon Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), reversed a conviction because defense counsel was not permitted to personally inspect either a statement which a witness had given to the Government or his testimony before the Grand Jury. United States v. Rosenberg, 245 F.2d 870 (C.A.3, 1957). That decision was clearly correct since it involved a statement of a witness. However, because the Supreme Court subsequently ruled that the Jencks rationale is not to be applied to Grand Jury transcripts, Pittsburgh Plate Glass Co. v. United States, supra, that case is not authority for the proposition that defense counsel has an unqualified right to examine such a transcript.

We think that the rule of the Second Circuit as expressed in United States v. Giampa, supra, equates the right of the defense to an examination of Grand Jury testimony to the right to the production of a Jencks Act statement. The only distinction is that the trial judge must first examine the Grand Jury transcript. But the Supreme Court has expressly held that the rationale of Jencks is not to be applied to Grand Jury testimony, and that the defendant has the burden of establishing a particularized need for such testimony. Pittsburgh Plate Glass Co. v. United States, supra. The question then is whether such a need has been shown in the case at bar.

In making the request for an examination by the district court, defense counsel cited nothing to indicate the likelihood of discrepancies in the testimony of Wood. In this court, the sole reason advanced for such an examination is that Wood, who admitted that he was a paid informant of the Government, supplied the only direct evidence in the case against Feldman. While this fact is significant, the record discloses an extensive, searching cross examination of Wood by several counsel for the various defendants. This included the use of his statement to the Secret Service in an attempt to impeach him. This prolonged interrogation failed to impair his credibility. In addition, his version of the critical events was supported by circumstantial evidence. In this setting, the district court, in whose informed discretion Rule 6(e) of the Federal Rules of Criminal Procedure vests the power of inspection, held that:

"* * * In this case no 'particularized need' was shown. It was apparent that counsel sought only, as he himself put it, the opportunity to see if there might be inconsistencies in Wood's testimony. * * *" 215 F.Supp. at 397.

In view of the opportunity of the district court to observe this witness as well as the entire course of the trial, we cannot say that he abused his discretion in failing to make the requested inspection.

We have examined the other questions raised by the appellant, but find them to be without merit.

The judgment of the district court will be affirmed.