UNITED STATES OF AMERICA

v.

MATIAS DELERME, JR., Appellant

No. 71-2047

United States Court of Appeals

Third Circuit

Argued at Charlotte Amalie, St. Thomas

January 27, 1972

Decided March 14, 1972

KENNETH A. ROSSKOPF, ESQ. (GAMAL & ROSSKOPF), Christiansted, St. Croix, V.I., *for appellant*

JULIO A. BRADY, ESQ., Assistant United States Attorney, St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, ALDISERT and GIBBONS, *Circuit Judges*

OPINION OF THE COURT

ALDISERT, *Circuit Judge*

This appeal from a judgment of conviction entered on a non-jury finding of guilty under 18 U.S.C. § 242, prohibiting the wilful deprivation under color of law of the rights, privileges or immunities guaranteed to an inhabitant by the Constitution, poses the single question whether there was sufficient proof that the accused, a police officer, took it upon himself to administer punishment for an alleged traffic offense. If such was his purpose, his conduct deprived a Virgin Islands resident of due process of law, and thus was duly cognizable as a federal criminal offense under the deprivation statute.

The prosecution emanated from an incident which occurred on Centerline Road, St. Croix, when appellant, an off-duty police officer, not in uniform and operating a private motor car in which a lady friend was a passenger, attempted to pass an automobile operated by Odo Harvey Chicot. It was appellant's contention that the Chicot vehicle accelerated as he attempted to overtake it, whereupon appellant undertook to apprehend Chicot for the purpose of giving him "a warning."

Testimony was conflicting as to what transpired thereafter, but the court found "that the weight of the evidence in this case supports the following facts:

Mr. Chicot left Frederiksted sometime around nine p.m. to go toward Christiansted. He left the middle of Frederiksted somewhere near St. Patrick's Church.

When he got to the Post Office he picked up a hitchhiker, Mr. St. Remaine, an acquaintance, and the two of them were seated and commenced going down the road from Frederiksted toward Christiansted.

When they approached Hannah's Rest corner they observed lights of a car coming up from behind and apparently intending to pass.

The occupants of that car that was going to pass were the defendant and Mrs. [Almira] Espinosa. They, too, were proceeding from Frederiksted toward Christiansted.

According to Mrs. Espinosa's testimony the vehicle driven by Mr. Chicot was going at a moderate rate of speed. The defendant testified that he was going slow. The testimony is that Mr. Delerme wanted to pass and he gave a passing signal. His testimony is that as soon as he tried to pass, the vehicle in front sped up, which prevented him from clearing the traffic lane of the vehicle coming from east to west and he had to backtrack and fall behind.

The Court finds that this may have angered the defendant because the evidence shows that immediately after this incident he determined to catch up with the defendant and, as he said, to warn him and tell him that he almost caused an accident. This was the beginning of a chase, and the Court finds that there was a chase from Hannah's Rest corner to approximately where Mr. Cintron's market is located. At that point the defendant was able

517

to cut off Mr. Chicot, and with both vehicles stopped he got out to approach him.

He also testified that before he was able to cut him off he was holding his badge in his hand and attempting to yell across from car to car that he was an officer, that wanted him to stop. He also testified that as he approached Mr. Chicot's vehicle, at this area he was not able to approach very close but he was sure that Mr. Chicot saw his badge in his hand.

The Court does not express any opinion whether Mr. Chicot or his passenger saw the badge or not. I do not think it is relevant at this point; at this point there was no arrest.

Mr. Chicot then took up his flight and attempted to turn into another road off of Centerline Road—I believe it was said to be Good Hope Road, but between Cintron's Supermarket and this turnoff there apparently was a chase and zigzagging and an attempt to cut him off the road. As he tried to turn off Centerline Road and to proceed south he was stopped and blocked by the defendant. Here again he successfully backed up and decided to go back to Frederiksted. And the Court is impressed with the fact that he did turn around and proceed back to Frederiksted. As he testified, he went back to Frederiksted to report the incident to the police.

On his way back he was chased again by the defendant. The defendant was resolved to catch up with him. They finally stopped. The second time they stopped the defendant was able to block his exit so that he could not move forward. He tried to move back and he apparently stalled his car. This was at Queen's Cross Street.

The testimony of an eye witness, and the Court so finds, was as follows: that the defendant got out of his car and approached Mr. Chicot's car, first on the right side, and as he got to the right side he opened the door and the passenger came out. The passenger gave the credible story that as he got out he was struck with a nightstick. He also testified that the time before when they stopped that the defendant did come to or towards the car with a stick. He did not describe it as a police nightstick but he said it was a stick.

The Court finds that there was a slight scuffle between the defendant and the passenger, Mr. St. Remaine, but Mr. St. Remaine fled and stopped any further encounter.

With that the defendant proceeded around the rear of the car and approached the driver's side. As he approached the driver's side the driver got out and there was a scuffle.

518

The Court finds that the defendant did use his nightstick, and used it without just cause, that he struck Mr. Chicot on the head, as tesfified by the eyewitness and Mr. Chicot.

The report from the doctor from the hospital, which was admitted into evidence by stipulation of counsel, indicates that Mr. Chicot suffered a laceration of the forehead which required eight stitches. He also suffered an abrasion of the left cheek. The Court believes that this was caused by the blow of the nightstick and discounts the defendant's testimony that this injury was caused by his falling to the pavement."

Having found the foregoing as historical facts, the court then proceeded to the ultimate finding of guilt:

The Court therefore finds that the defendant as a police officer under color of law did in fact wilfully subject Mr. Chicot to a deprivation of his civil rights in that he, without justification, gave him punishment, he chose to administer punishment himself and took it upon himself to do it right then and there.

The Court feels that this was done in the passion of anger, the evidence seems to bring that out, and of course impressed that it came from this chase that started at Hannah's Rest corner to Good Hope Road and all the way back to Frederiksted.

Initially, we are faced with the troublesome task of discerning the appropriate standard of appellate review of non-jury findings in a criminal proceeding. Unlike the corresponding civil rule, F. R. Civ. P. 52(a),[1] Criminal Rule 23(c) does not disclose what effect must be given such findings. It is suggested that the applicable standard of appellate review is dependent upon the specific findings being reviewed; that there is a difference between an ultimate finding of guilt and findings other than guilt. Professor Wright[2] indicates that in the former category there exists a division of authorities, with some courts holding that the guilt determination must stand if sup-

---

[1] Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

[2] Wright, 2 FEDERAL PRACTICE AND PROCEDURE, § 374 at 15–17.

ported by substantial evidence.[3] Others reverse only if the finding is "clearly erroneous,"[4] while still others reverse when a reasonable mind could not find guilt beyond a reasonable doubt.[5] Professor Orfield,[6] on the other hand, states flatly that "the Court of Appeals applies the rule that the evidence is to be considered in the light most favorable to the Government, reversing only if it concludes that there was no substantial evidence to support the verdict."[7]

Concerning findings other than a determination of guilt there is persuasive authority that the "clearly erroneous" standard applies. Thus, the Supreme Court held that findings in a Jencks Act problem "properly are ones of fact, the determination of which by the district judge may not be disturbed unless clearly erroneous." Campbell v. United States, 373 U.S. 487, 493 (1963). Again, affirming a trial court's finding that consent was obtained prior to a search, the Court observed: "We cannot say as a matter of law that that finding was erroneous." Davis v. United States, 328 U.S. 582, 593 (1946). See also United States v. Gray, 421 F.2d 316 (5th Cir. 1970).

Although we have recently said that in reviewing a finding of guilty by a trial judge, the evidence must be considered in the light most favorable to the government, Government of the Virgin Islands v. Duvergee, — F.2d — (3d Cir., No. 71-1797, filed —, 1972), relying on United States v. Anderson, 409 F.2d 836, 837 (3d Cir. 1969), the cases cited in Anderson in support of that proposition

---

[3] United States v. Tutino, 269 F.2d 488, 490 (2d Cir. 1959); United States v. Owen, 231 F.2d 831, 833 (7th Cir.), cert. denied, 352 U.S. 843 (1956).

[4] Maxwell v. United States, 277 F.2d 481, 510 (6th Cir. 1960).

[5] Jackson v. United States, 353 F.2d 862, 864–66 (D.C. Cir. 1965).

[6] Orfield, 3 CRIMINAL PROCEDURE UNDER THE FEDERAL RULES, § 23:55 at 76–77.

[7] United States v. Saunders, 325 F.2d 840, 841–42 (6th Cir. 1964), cert. denied, 379 U.S. 978 (1965); Jelaza v. United States, 179 F.2d 202, 204 (4th Cir. 1950).

merely announced the general rule relating to the standard utilized to review jury verdicts.[8]

As to findings describing historical or narrative events in a criminal proceeding, we see no cogent reason to depart from the "clearly erroneous" rule utilized by appellate courts in reviewing civil matters, and explicitly utilized by Mr. Justice Brennan in reviewing the trial court's finding in Campbell v. United States, supra. We are persuaded that where the evidence consists largely of oral testimony contradictory in nature, "due regard [should] be given to the opportunity of the trial court to judge the credibility of the witnesses." F. R. CIV. P. 52(a).

We are not unmindful that appeals in criminal cases, except those authorized by 18 U.S.C. § 3731, are limited to those lodged by defendants from judgments of convictions, wherein the government has prevailed. Under such circumstances, there is at best a nebulous distinction between applying the "clearly erroneous" standard and the rule that the evidence is to be considered in the light most favorable to the government in the presence of substantial supportive evidence. Indeed, it may be that the two rules are but negative and affirmative articulations of the identical standard. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). So defined, this standard obviously turns on the quantum of evidence on the record: a mere scintilla will not suffice; the evidence must rise to at least that degree which a reasonable mind might accept to support a conclusion. Thus, we come within the parameters enunciated by the Supreme Court in defining substantial evidence in

[8] See, United States v. Boyance, 329 F.2d 372, 374 (3d Cir.), cert. denied sub nom, Feldman v. United States, 377 U.S. 965 (1964); United States v. McCurry, 248 F.2d 116 (3d Cir. 1957).

Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951):

> Accordingly, it 'must do more than create a suspicion of the existence of the fact to be established. . . . it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' Labor Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300.

■ We therefore, conclude that in appeals from non-jury convictions, insofar as the historical or narrative facts are concerned, there is no practical difference between the "clearly erroneous" rule and a standard of examining the record in the light most favorable to the government so long as the substantial evidence test is met. Applying either standard to the historical or narrative facts as found by the court, we will not disturb these findings.

■ Moving then to the ultimate factual question of guilt, we perceive the role of a reviewing court here to coincide with its traditional role in reviewing judgments of conviction entered on jury verdicts of guilty. The test is whether there was substantial supportive evidence. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Provenzano, 334 F.2d 678, 683–84 (3d Cir.), cert. denied, 379 U.S. 947 (1964).

■ In the instant case, the findings of the historical facts are critical to the ultimate finding. When the appellant finally cornered the car, he first struck with his nightstick the passenger, who could not be considered as a violator of any traffic laws. Because he was not the driver there was no reason for the officer to arrest him and, indeed, little reason even to approach him except to administer punishment. The officer then moved to the driver's side of the car, attacking him with his night-stick, "and used it without just cause," inflicting a "lacera-

tion on the forehead which required eight stitches." Under these circumstances and the other findings of the court, we hold there was sufficient evidence to support the ultimate finding that the appellant "did in fact wilfully subject [Chicot] to a deprivation of his civil rights" by administering a physical beating as punishment for a traffic violation. Added to these circumstances is the testimony of passenger St. Remaine that: "On the way up . . . before he blocks the place . . . he said he going to breaking your fucking ass."

In agreeing with the district court that there was sufficient evidence of intent in the instant case, we do not so intimate that every assault by a police officer or official of a state or territory ipso facto transfers a state offense to an offense of constitutional dimensions under 18 U.S.C. § 242. Excessive force in making an arrest may be a common law assault and battery, simple or aggravated, or in the Virgin Islands, a violation of 14 V.I.C. §§ 291–299. We have previously held that not every action sounding in civil tort may be translated into a claim for relief under the Civil Rights Act, 42 U.S.C. § 1983. Gittlemacher v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970); National Land & Investment Co. v. Specter, 428 F.2d 91, 98–100 (3d Cir. 1970).

■ Thus we conclude that in a criminal prosecution under § 242, it is only where there is supportive evidence found by the fact finder of a wilful intention to deprive another of his constitutional rights that the federal statute comes into play. It is one thing to be guilty of excessive force, and thus chargeable with violating the law of the state and territory; it is quite another for a policeman to administer a physical beating as punishment for allegedly breaking the law. In the latter case the police officer has acted as prosecutor, judge, and jury; he has brought the charges, found the suspect guilty, and admin-

istered punishment. Indeed, when a policeman takes it upon himself to adjudicate guilt and administer punishment, even of a non-corporeal nature, he has deprived that person of due process of law as guaranteed by the Fifth Amendment, the Fourteenth Amendment, and, where applicable, the Bill of Rights of the Virgin Islands, 48 U.S.C. § 1561.

On balance, therefore, we find there was sufficient evidence in the instant case to support a finding of the requisite intent to deprive Chicot of his constitutional rights. Screws v. United States, 325 U.S. 91 (1945); United States v. Ramey, 336 F.2d 512 (4th Cir. 1964), cert. denied, 379 U.S. 972 (1965); United States v. Crews, 160 F.2d 746 (5th Cir. 1947).

The judgment of conviction will be affirmed.

---

SEITZ, *Chief Judge*, dissenting.

In Screws v. United States, 325 U.S. 91, 103–07, (1945), the Supreme Court construed 18 U.S.C.A. § 242 to require proof that the defendant acted with the specific intent and purpose to deprive the particular complainant of a constitutional right "made definite by decision or other rule of law. . . ." Here the majority upholds the district court finding that defendant had such a specific intent and purpose. However, as the district court itself indicated, the testimony suggested that the defendant, aroused by the relentless and circuitous automobile chase, acted "in the passion of anger." In my view, such evidence does not permit the conclusion that the defendant possessed "some specialized knowledge or design or some evil beyond the common law intent to do injury." Morrissette v. United States, 342 U.S. 246, 265 (1952). A strict evaluation of the evidence is necessary if federal prosecutions under § 242 are not to swallow up state and local criminal law.