

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2002

# Govt of VI v. Bryan

Precedential or Non-Precedential:

Docket 1-2780

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Govt of VI v. Bryan" (2002). *2002 Decisions.* Paper 57.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/57

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2780

GOVERNMENT OF THE VIRGIN ISLANDS

v.

ADELBERT M. BRYAN,

Appellant

On Appeal from the District Court
of the Virgin Islands – Appellate Division
(D.C. Criminal No. 98-cr-00171)
Hon. Raymond L. Finch, Chief Judge
Hon. Thomas K. Moore, District Judge
Hon. Alphonso G. Andrews, Territorial Judge

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 6, 2001

BEFORE: BECKER, Chief Judge, NYGAARD and COWEN, Circuit Judges

(Filed January 29, 2002)

MEMORANDUM OPINION

COWEN, Circuit Judge.
    In this criminal case involving a charge of destruction of property, we are called
upon to review a judgment of guilty following a bench trial.  Because we discern no error
in the District Court Judgment, we will affirm.
                                    I.
    On November 7, 1996, the Legislature of the Virgin Islands was in session and
Defendant, Virgin Islands Senator Adelbert M. Bryan ("Bryan"), was in attendance.
Also present was Steve Rockstein ("Rockstein"), an experienced professional
photographer for the Daily News.  Rockstein began taking pictures of Bryan.  Testimony

adduced at trial from several witnesses indicated that Rockstein's taking of photographs produced a rapid and incessant clicking or flashing effect.

Bryan was upset with Rockstein's high level of photographic activity and complained to Senate President Almando Liburd.  Senator Liburd directed the Sergeant-at-arms to stop Rockstein from taking further pictures.  But Rockstein did not heed the request of the Sergeant-at-arms and continued to take pictures of Bryan.  At some point Bryan  approached Rockstein, grabbed the camera that Rockstein was using, and threw it to the floor.  The sound of the camera hitting the floor was clearly audible to people in the vicinity.

The Government of the Virgin Islands ("GVI") charged Bryan with destruction of property, in violation of 14 V.I.C.   1266.  The criminal Complaint read, in pertinent part:

> On or about November 7, 1996 in St. Thomas, Virgin Islands, Adelbert "Bert" Bryan, did maliciously injure or destroy personal property not his own and belonging to the Daily News, to wit; a camera, in violation of 14 V.I.C. section 1266.

App. at 5.

After a one-day bench trial in which many witnesses including experts on camera construction and usage testified for both sides, the Territorial Court adjudged Bryan guilty of destruction of property.  14 V.I.C.   1266.  In the Order finding Bryan guilty, the trial judge stated that Rockstein was using a camera that had a technical feature allowing for a rapid snapping of photographs.  The judge further found that the camera that Bryan threw to the floor that day was the same camera introduced into evidence at the trial (Exhibit "G-3").  G-3, a Nikon FM-2 camera, showed manifold signs of physical damage when displayed at the trial.

The trial judge also explained that while Bryan's witnesses questioned whether the extent of damage seen on G-3 could have been caused by Bryan's act of throwing the camera to the floor, those witnesses did not dispute that Bryan's actions could have injured a camera to some degree, even if slight.  In support of his Order, the trial judge

further cited oral testimony that: (1) the camera was thrown to the ground by Bryan with "some force" and was not "gingerly" placed; (2) the camera's flash separated upon impact with the ground; (3) the camera's lens has not worked properly since the incident; and (4) the "flash gadget" which had a large crack could have separated from the camera upon impact. App. at 16-18. In sum, the judge found that the "unavoidable conclusion" was that "the camera sustained injuries." Bryan was sentenced to ninety (90) days of probation plus a fine of two hundred dollars ($200), with seventy five dollars ($75) suspended. Bryan was also ordered to pay restitution in the amount of three hundred fifty dollars ($350).

Following his conviction, Bryan filed a Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, a Motion for New Trial. In his Motion, Bryan argued that the physically damaged camera introduced by GVI at trial G-3 was not the camera involved in the incident at the Legislature. Bryan posited that, based on trial testimony, there was a blatant inconsistency in the Order of the Territorial Court finding Bryan guilty of destruction of property. More specifically, Bryan questioned how the trial judge could find that Rockstein was using a camera with a technical feature for taking pictures in rapid succession when G-3 was a camera model without such a feature. To cure any alleged factual inconsistency, GVI argued in its opposition papers that "[i]t is entirely believable that as a professional photographer he [Rockstein] is experienced and competent in manually advancing film in rapid succession but the pictures were not taken in rapid succession through the use of an automatic film advance feature." App. at 43.

The Territorial Court denied Bryan any post-trial relief. After setting forth the legal standard for evaluating a Rule 29 motion, the Court addressed the alleged factual inconsistency raised by Bryan as follows:

> On the day of the incident, Mr. Rockstein had two cameras. If the Government proved that either one of those cameras was damaged by defendant, the evidence would support a conviction.

App. at 26.

The trial judge also stated that the damages seen on G-3 were consistent with GVI's expert testimony, which indicated that such damage could be caused by throwing the camera to the floor.  App. at 26-27.  The trial judge further explained that GVI's expert saw no evidence  that the camera was tampered with before being introduced as a trial exhibit.  Specifically (according to GVI's expert), there were no tool marks, scratch marks, or pry marks to indicate that any tampering had taken place.  App. at 27.  The judge concluded that:

> The above facts earnestly undermine the defense's contention that the camera which was admitted in evidence was damaged after its removal from the Legislature or that all the damage to the camera was inflicted after its removal.

App. at 27.

Bryan appealed to the District Court of the Virgin Islands, Appellate Division, arguing again that Exhibit G-3 was not the camera grabbed by Bryan on the date in question.  After a detailed recitation of the testimony adduced at trial, the Appellate Division affirmed.  The Court concluded that the Territorial Court's Order was not "clearly erroneous."  In reaching this determination, it reasoned that the Territorial Court could reasonably find that Rockstein was a credible witness and that his testimony alone could sustain a guilty verdict.  The Appellate Division further stated that several witnesses appearing at trial corroborated Rockstein's testimony that Bryan grabbed G-3 from him and damaged it at least partially by throwing it to the floor.

                                        II.

We have carefully reviewed the parties' briefs, the record, and the judgments below, and conclude that no reversible error has occurred.  We remind the parties as the Appellate Division did that we are constrained by a sharply delineated standard of review when analyzing the results of a criminal bench trial.

We evaluate the trial court's findings in a non-jury criminal trial through the "clearly erroneous" lens of review.  See United States v. Delerme, 457 F.2d 156 (3d Cir. 1972).  Under that standard, we ask whether the evidence adduced at trial would permit "reasonable mind[s]" to accept a particular conclusion.  See id., 457 F.2d at 160.  Unlike

de novo review, deference as to factual findings must be accorded to the trial court. We are not permitted to substitute our judgment for that of the trial court, even if we would have decided the contested issue differently in the first instance. More specifically, where two permissible views of the evidence exist, we will not adjudge the trial court "clearly erroneous" for choosing one of them. See generally Anderson v. City of Bessemer, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 1511-12 (1985); Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972).

Moreover, in analyzing the trial court record, the evidence (and all reasonable inferences therefrom) is viewed in the light most favorable to the Government. See Delerme, 457 F.2d at 160; Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1997) (citation omitted). Our standard of review also incorporates the well-settled principle of appellate jurisprudence that where evidence consists of disputed oral testimony, due regard is given the trial judge's opportunity to evaluate witness credibility. Delerme, 457 F.2d at 160. Having viewed the demeanor of the witnesses first-hand, the trial judge sits in the best position to determine the veracity of live testimony.

Applying these principles, we cannot conclude that Bryan's conviction on the destruction of property charge requires reversal. In his appeal to this Court, Bryan again argues that G-3 was not the camera he grabbed and that, therefore, GVI introduced the wrong camera into evidence. Appellant's Brief at 25-29. In the same vein, Bryan asserts that the trial judge committed reversible error by finding that Bryan had two cameras on the day in question and that the Appellate Division erred by tacitly accepting that specific finding. Id. Bryan labels the trial judge's findings "illogical" and "inconsistent." Id. at 29. The Government simply responds that the trial judge's findings were not clearly erroneous. Appellee's Brief at 9-15.

We acknowledge the strength of Bryan's arguments and the contention that G-3 may not have been the camera involved in the altercation at the Legislature. However, we find these arguments ultimately unavailing. Our own thorough review of the trial record reveals substantial evidence that when viewed in the light most favorable to the

Government proved beyond reasonable doubt that Bryan maliciously "injure[d]" a
camera not belonging to him.  14 V.I.C.  1266; Delerme, 457 F.2d at 160; see also
Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979).  For the foregoing reasons, the
District Court's Judgment of June 13, 2001 will be affirmed.

TO THE CLERK:

Please file the foregoing opinion.

/s/ Robert E. Cowen
United States Circuit Judge

GOVERNMENT OF THE VIRGIN ISLANDS V. ADELBERT M. BRYAN, No. 01-2780

BECKER, Chief Judge, Concurring in the Judgement.

This might have been a very straightforward case for review.  The evidence
clearly supports the conclusion that Senator Bryan wrested a camera from Mr. Rockstein
and flung it to the floor.  The camera introduced into evidence without objection (G-3)
had the kind of damage that one would expect from the kind of incident described.
Indeed, stress marks on the negative containing images of Bryan were consistent with the

damage to exhibit G-3 itself, thereby supporting the inference that exhibit G-3 was the
camera involved in the incident.  If a jury had found Bryan guilty on the basis of this
evidence, an affirmance of the judgment would be a foregone conclusion.  The problem
with this appeal stems from some of the trial judge's statements in his post-trial opinion
denying Bryan's Motion for Judgment of Acquittal.

The issue is so well framed by Bryan's Reply Brief that it will be useful to
rescribe its relevant passages here:

> The issue in this case is whether Exhibit G-3 was the
> camera involved in this incident.  While G-3 does have
> extensive damage, it is undisputed that G-3 is not the type of
> camera that can automatically (and rapidly) advance its film,
> nor does it have a film winder attached which could have
> performed this same function.  However, Judge Swan found
> that the camera involved in the incident had the capacity to
> fast forward the film, finding in his initial opinion as follows
> (JA 9-10):
>
>> The nomenclature of Rockstein's camera, and
>> whatever additional mechanism that was
>> mounted upon the camera, allowed Rockstein to
>> continue to take Bryan's photograph in
>> unremitting succession.
>
>> Thus, G-3 could not have been the camera Rockstein was
> using when taking pictures at the Legislature on the date in
> question.

I note additionally that the evidence was to the effect that a camera with a winder
attached could not have sustained the kind of damage sustained by G-3.  I also note,
however, that this issue was not presented to the judge at trial.

The Reply Brief continues:

> When this discrepancy between his findings and
> the
> nomenclature of G-3 was brought to Judge Swan's attention
> in a post-trial motion, Judge Swan did not change his prior
> holding by finding that the camera did not have a fast forward
> mechanism, as he instead re-affirmed his prior holding by
> stating (JA 26):
>
>> Defendant suggests that one of the cameras
> was
>> taking photographs in rapid succession.  A
>> witness, Mr. Sam Daly, who is also a
>> photographer, suggested that on the day of the
>> incident, Mr. Rockstein had a Nikon F4 camera.
>> This camera has a built-in drive which can take

photographs in rapid succession.  This suggestion is consistent with the evidence adduced at trial.

However, to cure this inconsistency, Judge Swan then made a new finding, as follows (JA 26):

On the day of the incident, Mr. Rockstein had two cameras.  If the Government proved that one of those cameras was damaged by defendant, the evidence would support a conviction.  (emphasis added).

Rockstein, however, testified that he only had one camera on the day in question and only shot one roll of film, which he developed later that day.  Thus, there were not two cameras.

These arguments are extremely forceful, and present what for me are troubling questions.  But there are countervailing considerations: (1) there was evidence from which it might be inferred that Rockstein did have two cameras; and (2) there was also evidence that a photographer as skilled and experienced as Rockstein would have been able to operate the camera manually with as much celerity as if it had had a winder.

Judge Swan is an able, experienced, and conscientious jurist.  In this high profile case, perhaps in an effort to tie down every loose end, he may have said too much.  In another sense, however   in terms of not clearing up the issues that trouble me   he may have said too little, but I lay much of that at the failure of the defense generally to raise these issues squarely at trial.

We are here reviewing the findings (and verdict) of a trial judge and our scope of review is highly deferential (we apply the clearly erroneous standard).  Bryan has made a strong argument that the trial judge has made inconsistent findings.  He appears to have done so.  But even if he did, I am hard pressed to say that his bottom line   that Bryan damaged G-3 by pulling it from Rockstein's person and hurling it to the floor, is unsupported.  Under these circumstances, I join in the judgment.