**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1258
_____

UNITED STATES OF AMERICA

v.

DWAYNE BATES,
                            Appellant.

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 04-08-cr-245)
District Judge: Honorable James F. McClure, Jr.

Submitted under Third Circuit LAR 34.1(a)
November 4, 2010

Before:  SCIRICA, RENDELL and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 24, 2010)

O P I N I O N
_____

**ROTH,** <u>Circuit Judge:</u>

Dwayne Bates appeals his conviction for possession of a firearm by a convicted

felon in violation of 18 U.S.C. § 922(g), and receiving and possessing an unregistered

firearm in violation of 26 U.S.C. § 5861(d).  He contends that the evidence was

1

insufficient to support his conviction for these offenses.[1] We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm.

## I. Background

Based on the evidence presented at Bates's bench trial, a reasonable trier of fact could have found the following. On January 19, 2006, Harry William Day, a confidential informant for the Pennsylvania State Police (PSP), informed his PSP contact, state trooper Hutson, that Bates was interested in selling Day a sawed-off shotgun. Day had been an informant for the PSP since 2005 and had received payments totaling approximately $4,050 from the PSP as compensation for participating in controlled buys of illegal drugs, usually in installments of $50 or $100 at a time. Day had encountered Bates on several occasions at an apartment in a duplex in Williamsport, owned by Day and leased to an associate of Bates, known to Day only as "Slim." Although the apartment had been leased to Slim, Bates was a tenant at the apartment and used it to sell narcotics.

On January 19, Day had come to the apartment to fix the water heater and, en route to the basement where the water heater was located, encountered Bates holding a sawed-off shotgun and talking with another person. After fixing the water heater, Day came back upstairs and asked Bates if the shotgun was for sale. Bates responded that it was and gave Day a price. Day then called Trooper Hutson and told him that he had spoken with Bates and that Bates was willing to sell him a sawed-off shotgun

The following day, Hutson and another trooper picked up Day in their squad car

[1]Bates does not appeal his sentence.

and drove to a store near the apartment. Hutson searched Day and then provided him with $100 in marked bills to purchase the shotgun. Day did not wear a transmitter or recording device. Day then went to the apartment, observed by Hutson and another police officer. Bates let Day in to the apartment, Day gave Bates the $100 in marked bills, and Bates went upstairs and returned with the sawed-off shotgun. Bates held the gun around the trigger area before handing it to Day, who took it by the butt, put it under his coat, and left. Day then walked backed to Hutson's car and gave him the gun.

Examination of the shotgun revealed that its serial number had been scratched but was still visible. Further examination showed that the weapon was operable, *i.e.*, it could be fired with appropriate ammunition. The butt stock had been sawed off and the end of the barrel had been cut off, probably with a pipe-cutter. These modifications were obvious because there were burrs in the metal on the tip of the barrel, the butt stock was missing a recoil pad, and the nut and bolt connecting the butt to the gun were exposed. The barrel of the shotgun was 17 and 7/8 inches long, and the shotgun's overall length was 25 and 1/16 inches.[2]

## II. Procedural History

Bates was later arrested and charged in a three-count indictment with (1) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g), (2) altering or obscuring the serial number of a firearm in violation of 18 U.S.C. § 922(k),

---

[2]Shotguns with a total length of less than 26 inches or a barrel of less than 18 inches in length are defined as "firearms" for purposes of federal gun laws, *see* 26 U.S.C. § 5845(a), and must be registered, *see id.* § 5841. 26 U.S.C. § 5861(d) makes it a crime to possess or receive an unregistered firearm.

and (3) possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). Bates pleaded not guilty, waived his right to a jury trial, and the District Court held a two-day bench trial. The government presented the testimony of Day, Hutson, and three expert witnesses, who opined that the shotgun had been manufactured outside of Pennsylvania and that it had been modified to shorten its barrel and butt-stock.

Bates did not present any evidence at the trial. Only Day's testimony placed Bates at the apartment with the shotgun. The marked bills provided to Day, which he used to purchase the shotgun, were never recovered. Hutson testified that no effort was made to obtain fingerprints from the shotgun, because in his experience, it was rare that prints taken from a gun could be identified.

The District Court found Bates guilty on counts one and three. The court acknowledged that Day's testimony was critical, but found Day credible, notwithstanding the arguments against his credibility. Bates was sentenced to 70 months imprisonment followed by a three-year term of supervised release. He appealed.

## III. __Discussion__

In reviewing a criminal conviction after a bench trial "we must determine whether there is substantial supportive evidence for the district court's findings on the ultimate factual question of guilt." *United States v. Gillen*, 599 F.2d 541, 546 (3d Cir. 1979) (citing *United States v. Delerme*, 457 F.2d 156, 160 (3d Cir. 1972)). Several principles guide our review: (1) the trial judge's determination must be based on evidence "which a reasonable mind might accept to support a conclusion," (2) the practical effect of this rule is that we view "the record in the light most favorable to the government," and (3)

4

"where the evidence consists largely of oral testimony contradictory in nature, 'due regard [should] be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Delerme*, 457 F.2d at 160. Bates's contentions on appeal boil down to two arguments: (1) Day's testimony alone was insufficient to support Bates's convictions, and (2) there was insufficient evidence that Bates knowingly possessed a "firearm" as defined in 26 U.S.C. § 5845(a). We address each contention in turn.

## A. Sufficiency of Day's Testimony

Bates contends that Day's testimony is insufficient to establish that he possessed the sawed-off shotgun – a required element of both his offenses. *See* 18 U.S.C. § 922(g); 26 U.S.C. § 5861(d). We disagree.

We defer to the District Court's superior opportunity to assess Day's credibility. *See Delerme*, 457 F.2d at 160. We therefore consider only whether Day's testimony, if credited, provides substantial evidence of each element of the offense charged. *See United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998). Day testified that he saw Bates holding the shotgun on two occasions, that Bates was willing to sell it to him, and that Bates did sell him the shotgun the following day. This testimony, if credited, provided substantial evidence that Bates possessed the shotgun. *See United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993).

## B. Evidence of Knowledge

Bates also contends that the evidence was insufficient to establish that he knew that the shotgun had the characteristics making its possession illegal. To establish a violation of § 5861(d), the government did not have to show Bates "knew that his

5

possession was unlawful, or that the firearm was unregistered." *Rogers v. United States*, 522 U.S. 252, 255 (1998). The government was required to prove beyond a reasonable doubt that Bates "*knew* of the features that made what he was making, possessing, or transferring, a 'firearm,'" *United States v. Hull*, 456 F.3d 133, 143 (3d Cir. 2006) (emphasis in original) (citing *Staples v. United States*, 511 U.S. 600, 619 (1994)), and more specifically, that Bates knew that the firearm's total length was less than 26 inches or its barrel length was less than 18 inches, *see* 26 U.S.C. § 5845(a)(1)-(2). Under the willful blindness doctrine, a defendant has knowledge of a fact if he is "aware of a high probability" of the fact and "consciously and deliberately tried to avoid learning about this fact." *United States v. Stadtmauer*, 620 F.3d 238, 257 (3d Cir. 2010).

The evidence presented by the government showed that the shotgun's total length was 25 and 1/16ths of an inch. It was obvious from the condition of the muzzle and butt stock that they had been cut off, and the serial number had been scratched. Day testified that Bates had been holding the shotgun and the District Court could reasonably infer from this that Bates was aware of these features of the gun. Viewing this evidence in the light most favorable to the government, substantial evidence supports the District Court's conclusion that Bates knew or ignored a high probability that the shotgun was less than 26 inches long.

## IV. Conclusion

For these reasons, we will affirm the District Court's judgment of commitment.